COURT OF APPEALS OF VIRGINIA


Present:  Judges Annunziata, Agee and Senior Judge Coleman


ROBERT B. GREEN, SR.

                                      MEMORANDUM OPINION*
v.    Record No. 1694-01-2                PER CURIAM
                                       JANUARY 8, 2002
RICHMOND DEPARTMENT OF SOCIAL SERVICES
 AND PHYLLIS GREEN

            FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                     Melvin R. Hughes, Judge

            (Robert W. Carll, on brief), for appellant.

            (Kate D. O'Leary, Assistant City Attorney;
            Louise Adamson; James Cooke, Guardian
            ad litem for the Infant Child, on brief),
            for appellees.


     Robert B. Green, Sr. (father) appeals the decision of the

circuit court approving the foster care service plan and

transferring custody to mother.  On appeal, he contends the trial

court failed to make a finding that the plan was in the child's

best interests.  Upon reviewing the record and briefs of the

parties, we conclude that this appeal is without merit.

Accordingly, we summarily affirm the decision of the trial court.

See Rule 5A:27.

─────────────────────

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

BACKGROUND

On appeal, we view the evidence and all the reasonable inferences in the light most favorable to appellee as the party prevailing below. See McGuire v. McGuire, 10 Va. App. 248, 250, 391 S.E.2d 344, 346 (1990). So viewed, the evidence showed that Phyllis Green (mother) filed a petition on August 22, 2000, pursuant to Code § 16.1-278.5, asking the juvenile and domestic relations district court (juvenile court) to evaluate and determine that her daughter, Latoya, is a child in need of supervision. Mother advised that Latoya, then thirteen years old, had a habit of leaving home without consent or reasonable cause and staying away for long periods of time. Mother described in her affidavit how, on August 21, 2000, around 8:00 p.m., while she and Latoya visited Byrd Park, Latoya asked to use the restroom and never returned.

On October 17, 2000, the juvenile court conducted a hearing on mother's petition. It sustained the petition, referred Latoya for evaluation and services, and awarded custody to the Richmond Department of Social Services (RDSS).

On December 13, 2000, RDSS prepared a foster care service plan for Latoya. The plan's goal was to return Latoya home, and the target date for achieving that goal was July 31, 2001.

On April 25, 2001, the trial court conducted a hearing to determine whether to approve the foster care service plan and return Latoya to mother. Shannon Krone, the RDSS social worker

-

who prepared the foster care plan, testified that Latoya came into RDSS custody on October 17, 2000, after her third incident of running away. Ten days later, on October 27, 2000, Latoya ran away from RDSS custody after leaving to go to school. Mother contacted RDSS in December 2000, and told them she had found Latoya. RDSS allowed Latoya to stay with mother because "Latoya was willing to stay there and not run away." Krone felt that returning Latoya to mother was an appropriate goal because RDSS obtained custody of Latoya through a CHINS[1] petition rather than because of any abuse or neglect by mother.

In a December 15, 2000 social history, Krone noted that Latoya "is unable to resolve conflict and . . . runs away to avoid problems." Latoya indicated to Krone that she had several friends with whom she would stay when she ran away. Latoya told Krone she ran away from mother because mother derided and criticized her for her sexual behavior. She told Krone she ran away from RDSS custody because she did not want to be placed in a foster home.

Mother is a Master Sergeant with the United States Army. She is able to provide housing and support for Latoya. Mother indicated a strong desire to regain custody of Latoya and a willingness to seek and participate in any services suggested by RDSS. She described her relationship with Latoya as positive and

---

[1] "CHINS" is an acronym that stands for child in need of supervision or child in need of services. See S.G. v. Prince William County Dep't Soc. Servs., 25 Va. App. 356, 359 n.3, 488 S.E.2d 653, 655 n.3 (1997).

-

loving.  Mother did not know why Latoya began running away or why she continued to do so.  According to mother, Latoya has been unable to give any specific reasons for her actions.

Father objected to mother regaining custody of Latoya. Father has been incarcerated since 1995, after being convicted of abducting and sexually assaulting mother.  He contends mother is not taking proper care of Latoya as evidenced by her running away and having problems.  Father expressed hopes that his mother or an aunt, both of whom live in Maryland, would gain custody of Latoya; however, he conceded that neither has filed a custody petition.

At the conclusion of the April 25, 2001 hearing, the trial court found that mother had acted appropriately in caring for Latoya, and it approved the foster care plan recommending return home.  By order dated June 22, 2001, the trial court approved the foster care plan and transferred custody to mother.

ANALYSIS

On appeal, appellant contends the trial court approved the foster care plan "without making a finding, supported by the evidence, that it was in the child's best interest."  In the trial court's June 22, 2001 dispositional order, father's only objection was "that the evidence presented was not sufficient for a finding that it was in the child's best interest to transfer custody to the mother."  Therefore, on appeal, we limit our analysis to the argument made before the trial court, namely, whether there was

-

sufficient evidence that return home was in Latoya's best interest.

The standard of proof in a proceeding approving or modifying a foster care service plan is proof by a preponderance of the evidence.  See Richmond Dep't of Soc. Servs. v. Carter, 28 Va. App. 494, 496-97, 507 S.E.2d 87, 88 (1998) (citing Padilla v. Norfolk Div. of Soc. Servs., 22 Va. App. 643, 645, 472 S.E.2d 648, 649 (1996)).  But see Code § 16.1-283(B) (requiring clear and convincing evidence to terminate a parent's residual rights).

Code § 16.1-281 provides guidelines and procedures relating to foster care plans.  Code § 16.1-281(B) provides, in pertinent part:

> If consistent with the child's health and safety, the plan shall be designed to support reasonable efforts which lead to the return of the child to his parents or other prior custodians within the shortest practicable time which shall be specified in the plan.  The child's health and safety shall be the paramount concern of the court and the agency throughout the placement, case planning, service provision and review process.

RDSS became involved with Latoya only after mother tried several times to deal with Latoya's habit of running away.  After the third incident, mother, on her own initiative, petitioned the juvenile court for help in seeking services and supervision for Latoya.  See Code §§ 16.1-278.4 (child in need of services) and 16.1-278.5 (child in need of supervision).  Thus, involvement by RDSS and the court was not due to abuse, neglect or abandonment.

-

<u>See</u> Code § 16.1-278.2 (involving more serious situations of parental unfitness or abuse, removing child through emergency protective orders).

The trial court considered the circumstances under which Latoya came before the court and heard evidence from mother, RDSS and father. That evidence showed that mother cared deeply for Latoya and was justifiably concerned when Latoya would suddenly disappear for no apparent reason. Evidence further revealed that Latoya ran away in October 2000 after being placed in RDSS custody. She indicated that she did so because she feared being placed in a foster home. Over a month after Latoya ran away from RDSS custody, mother located her.

Mother maintained employment and provided for Latoya and Latoya's brother, despite father's absence due to incarceration. When Latoya would leave without permission, mother acted appropriately, contacting authorities and searching for Latoya on her own. The evidence demonstrated that mother attempted to obtain counseling and was a caring and concerned parent who sought services to assist her daughter. At the April 25, 2001 hearing, the social worker, the attorney for RDSS, and Latoya's guardian <u>ad litem</u> recommended approval of the foster care service plan's goal of returning custody of Latoya to mother.

Despite father's hope that another relative gain custody of Latoya, no relatives petitioned for custody or appeared at the

-

hearing. Moreover, no relatives indicated to RDSS or the court a willingness or ability to care for Latoya.

Everyone involved with Latoya's supervision after her incidents of running away recommended returning custody to mother. Implicit in the trial court's approval of the plan and finding that mother had, at all times, acted appropriately was a finding that returning Latoya to her mother was in Latoya's best interest.

Viewed in the light most favorable to RDSS and mother, the trial court's implicit conclusion that returning custody to mother was in Latoya's best interest was supported by a preponderance of the evidence. For these reasons, the trial court did not err in approving the foster care plan. Accordingly, we summarily affirm the decision of the trial court. See Rule 5A:27.

Affirmed.

-