COURT OF APPEALS OF VIRGINIA

Present:  Judges Benton, Elder and Overton
Argued at Richmond, Virginia

S. G., A MINOR, BY
 J. PAUL WALLA, GUARDIAN AD LITEM
                                              OPINION BY
v.  Record No. 2020-96-4        JUDGE JAMES W. BENTON, JR.
                                         AUGUST 5, 1997
PRINCE WILLIAM COUNTY DEPARTMENT OF
 SOCIAL SERVICES, ET AL.


              FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
                     LeRoy F. Millette, Jr., Judge

          Joseph W. Kaestner (J. Paul Walla; Ashton,
          Walla & Associates, P.C., on brief), for
          appellant.

          Megan E. Kelly, Assistant County Attorney
          (Sharon E. Pandak, County Attorney; Michelle
          R. Robl, Assistant County Attorney, on
          brief), for appellee Prince William County
          Department of Social Services.

          No brief or argument for remaining appellees.


     A judge of the juvenile and domestic relations district

court ordered the Prince William County Department of Social

Services to provide treatment in a residential facility for S.G.,

a minor in the custody of Social Services.  Following an appeal

by Social Services, a circuit court judge ruled that the juvenile

court judge lacked authority to order that treatment because

Social Services had the sole statutory authority to determine the

minor's placement.  By her guardian ad litem, the minor contends

in this appeal that the juvenile court judge had the authority to

order treatment.  We agree and reverse the circuit court judge's

order.

I.

The minor was brought before the juvenile court for violating the terms of her probation.[1]  A juvenile court judge ruled that the minor had violated the terms of her probation and ordered that (1) Prince William County Community Services examine the minor and treat her if necessary, (2) Prince William County Department of Social Services (Social Services) prepare an assessment of the minor by October 5, 1995, and (3) the probation office refer the case to a Family Assessment and Planning Team (FAPT) to complete a report by October 5, 1995.[2]

After that order was entered, the minor, by her guardian ad litem, moved the juvenile court judge to transfer legal custody of the minor to Social Services.  Before the scheduled hearing on

_____

[1]Although the minor asserts on brief that she initially was brought into juvenile court "as a result of a routine Child in Need of Supervision [CHINS] . . . petition filed . . . when school authorities reported her as truant," see Code § 16.1-278.5, the record does not contain the initial petition.  Evidence in the record does indicate, however, that this was a CHINS proceeding.  See infra note 3.

[2]FAPTs are authorized to "assess the strengths and needs of troubled youths and families . . . and determine the complement of services required to meet these unique needs."  Code § 2.1-754.  See generally Code §§ 2.1-745 to 2.1-759.1.

A juvenile court judge is required, upon finding that a child is in need of supervision, see infra note 3, to have the child's needs evaluated.  See Code § 16.1-278.5(A).  The judge may have the FAPT perform this evaluation.  See id.; see also Fauquier Co. Dep't of Soc. Servs. v. Robinson, 20 Va. App. 142, 151-52, 455 S.E.2d 734, 739 (1995) (stating that Code § 16.1-278(A) authorizes courts "to compel the FAPT . . . to provide any necessary services"); Code § 2.1-757(D).  Thus, the juvenile court judge's order directing the probation office to refer the case to a FAPT was authorized by law.

October 5, 1995, the FAPT issued a report recommending that the minor, her mother, and her stepfather attend counseling and that the minor be released from probation.  After the October 5, 1995 hearing, the juvenile court judge returned the minor to her mother's custody, released the minor from probation, and ordered the minor, her mother, and her stepfather to participate in counseling.

Shortly after the minor was returned to her mother's custody, the minor ran away from home and did not attend school.  The juvenile court judge then placed the minor in the legal custody of Social Services and indicated that this was done "[a]s a partial disposition."  The judge made the findings that "reasonable efforts . . . ha[d] been made . . . to prevent removal and that continued placement in the home would be contrary to the welfare of the child."[3]  <u>See</u> Code

_____

[3]The motion previously filed by the guardian <u>ad</u> <u>litem</u> sought a change of custody pursuant to Code § 16.1-278.8, the provision for delinquent juveniles.  When the judge eventually transferred custody to Social Services, the judge did not set forth the provision under which he was proceeding.  However, the foster care service plan, issued after custody was transferred to Social Services, lists "CHINS" as the minor's "Custody Status."  "CHINS" is an abbreviation for "child in need of supervision" or "child in need of services."  At oral argument, Social Services agreed that this proceeding was initiated by a CHINS petition.  Accordingly, we conclude that the juvenile court judge acted pursuant to Code § 16.1-278.5(B)(1) ("Child in need of supervision") (authorizing the juvenile court judge to enter any order authorized in Code § 16.1-278.4 ("Child in need of services")).

The judge's reference to the minor as a "child," rather than a "juvenile," lends additional support to our conclusion that the trial judge was treating the minor as a child in need of supervision or services and not as a juvenile.  <u>Compare</u> Code § 16.1-278.4(6)(c) ("Any order . . . transferring legal custody of

-3-

§ 16.1-278.4(6)(c).

As required by Code § 16.1-281, Social Services filed with the juvenile court a foster care service plan. The juvenile court judge approved the plan. After that approval, Social Services placed the minor at the home of her paternal grandparents.

On review of the minor's case, the juvenile court judge ordered the FAPT to reevaluate the minor's status and issue a new report. The FAPT issued a report which recommended that treatment for the minor "be explored" at a therapeutic foster home or a residential treatment facility. The FAPT report also noted "[s]ome concerns . . . regarding the safety and appropriateness of [the minor's] grandparent's home" and recommended that Social Services determine whether the home was a "safe environment." The minor, by her guardian ad litem, moved the juvenile court judge to enter an order requiring treatment of the minor in a residential treatment facility. After hearing the arguments of counsel, the juvenile court judge entered an order providing, in relevant part, the following:

a child to . . . [S]ocial [S]ervices as provided in this subdivision shall be entered only upon a finding . . . that reasonable efforts have been made to prevent removal and . . . continued placement in the home would be contrary to the welfare of the child . . . .") (emphasis added), with Code § 16.1-278.8(13)(c) ("Any order . . . transferring legal custody of a juvenile to . . . [S]ocial [S]ervices as provided in this subdivision shall be entered only upon a finding . . . that reasonable efforts have been made to prevent removal and . . . continued placement in the home would be contrary to the welfare of the juvenile . . . .") (emphasis added).

-4-

> [T]he Court having received the [FAPT]
> recommendations of 19 March 1996, it
> appearing to the Court that the best interest
> of the [minor] would be served by placing her

in a therapeutic foster home . . . it is
. . . DECREED that:

1. [Social Services] shall arrange for the
placement of . . . [the minor] in a
Therapeutic Foster Home through United
Methodist Family Services (or its
equivalent); and,

2. If [Social Services] cannot place . . .
[the minor] in a Therapeutic Foster Home
through United Methodist Family Services (or
its equivalent), [Social Services] shall
arrange for her placement in a[n] appropriate
residential facility to be approved by this
Court prior to the Court's next review
date . . . .

Social Services appealed the order to the circuit court and filed a demurrer, asserting that the juvenile court judge was without jurisdiction or authority to enter the order. The circuit court judge sustained the demurrer "on the [ground] that as long as custody remains with [Social Services], Code § 16.1-278.8(13)(c) places authority for placement with [Social Services]."[4] The circuit court judge reversed the order.

II.

The issue on appeal is whether a juvenile court judge can order Social Services to place a minor in a facility for treatment when custody of the child has been granted to Social Services pursuant to Code § 16.1-278.4(6)(c).[5] In pertinent

---

[4]The provision of Code § 16.1-278.8(13)(c) relied upon by the circuit court judge is also contained in Code § 16.1-278.4(6)(c). Thus, our conclusion that the juvenile court judge proceeded under Code § 16.1-278.4(6)(c) does not affect the circuit court judge's reasoning.

[5]The resolution of this issue is the same under Code § 16.1-238.8(13)(c). See supra note 4.

part, Code § 16.1-278.4 provides as follows:

> If a child is found to be in need of services, the juvenile court or the circuit court may make any of the following orders of disposition for the supervision, care and rehabilitation of the child:
>
>     *    *    *    *    *    *    *
>
> 6.  Transfer legal custody to any of the following:
>
>     *    *    *    *    *    *    *
>
> c.  The local board of public welfare or social services of the county or city in which the court has jurisdiction . . . . <u>The board to which the child is committed shall have the final authority to determine the appropriate placement for the child</u>.

(Emphasis added).  Social Services argues, and the circuit court judge agreed, that because Social Services has "final authority to determine the appropriate placement for the child," the juvenile court judge lacked the power to enter the order.

The juvenile court judge based his authority to enter the order on Code §§ 2.1-757 and 16.1-281.  The order granting the minor's motion stated that the minor sought "(1) pursuant to [Code §] 2.1-757 E. . . . , an Order placing [the minor] in an appropriate residential treatment facility . . . and (2) pursuant to [Code §] 16.1-281 E., a review of [the minor's] present living circumstances."

Preliminarily, we note that Code § 2.1-757 establishes a statutory funding mechanism for the Comprehensive Services Act for At-Risk Youth and Families (CSA).  See Code §§ 2.1-745 to

2.1-759.1.  In addition to providing funding, Code § 2.1-757(E)

provides the juvenile court with the following power:

> In any matter properly before a court wherein the [FAPT] has recommended a level of treatment and services needed by the child and family, the court shall consider the recommendations of the [FAPT].  However, the court may make such other disposition as is authorized or required by law, and services ordered pursuant to such disposition shall qualify for funding under this section.

The purpose of that section is to authorize funding for

placements ordered by a judge in a proper case even when the

judge elects not to follow the FAPT's recommendation.  Cf.

Fauquier Co. Dep't of Soc. Servs. v. Robinson, 20 Va. App. 142,

154, 455 S.E.2d 734, 740 (1995).  By its express terms, Code

§ 2.1-757(E) requires that the "matter [be] properly before a

court" and authorizes funding only for dispositions that are

"authorized or required by law."  Thus, the juvenile court judge

could rely on Code § 2.1-757 as authority for his disposition if

the matter involving the minor was properly before the judge.

The other provision the juvenile court judge relied upon,

Code § 16.1-281, provides in pertinent part as follows:

> A.  In any case in which . . . legal custody of a child is given to . . . [S]ocial [S]ervices . . . , [Social Services] . . . or the . . . [FAPT] established pursuant to [Code] § 2.1-753 shall prepare a foster care plan for such child . . . .  [Social Services] . . . shall file the plan with the juvenile . . . court within sixty days following the transfer of custody . . . .

>           *    *    *    *    *    *    *

> C.  A copy of the entire foster care plan

-8-

shall be sent by the court to the attorney for the child, the child's parents or any other person standing in loco parentis at the time . . . [Social Services] obtained custody . . . . Any party receiving a copy of the plan may petition the court for a review of the plan.

\* \* \* \* \* \* \*

E. Nothing in this section shall limit the authority of the juvenile [court] judge or the staff of the juvenile court, upon order of the judge, to review the status of children in the custody of . . . [S]ocial [S]ervices . . . on its own motion.

The minor argues that the power "to review the status of children" set forth in subsection E granted the juvenile court judge the authority to consider the FAPT report and order Social Services to obtain treatment for the minor in a residential treatment facility. Social Services argues that the juvenile court judge divested himself of that authority when he granted Social Services legal custody of the minor under Code § 16.1-278.4(6)(c), which states that Social Services "shall have the final authority to determine the appropriate placement."

We hold that the juvenile court judge retained the authority to "review the status" of the minor even after she was placed in the custody of Social Services. Code § 16.1-281(E) expressly states that children in the custody of Social Services are those the juvenile court judge can review pursuant to that section. See id. (giving the juvenile court judge the power "to review the status of children in the custody of local boards of . . . social services").

Contrary to the argument of Social Services, Code § 16.1-278.4(6)(c) does not mandate a different result. The statement that "[t]he [local] board [of social services] to which the child is committed shall have the final authority to determine the appropriate placement for the child," Code § 16.1-278.4(6)(c), was intended to give Social Services the power to override the wishes or recommendations of the child's parents, the FAPT, or any other interested party. That section was not intended to divest the juvenile court judge of power to review the status of the minor.

Social Services argues that allowing the juvenile court judge to review its placement decisions would unduly interfere with its operations and thereby undermine the ability of Social Services to provide services to children. However persuasive that argument may be, nothing in the Code indicates an intent by the General Assembly to prevent the juvenile courts from reviewing the foster care decisions of Social Services. Rather, Code § 16.1-281 requires Social Services or the FAPT to file a foster care plan with the juvenile court within sixty days of receiving custody of the child. See Code § 16.1-281(A). The plan must contain the detailed information required by Code § 16.1-281(B). Thereafter, any interested party may petition the juvenile court for a review of the plan and the juvenile court judge may revise the plan. See Code § 16.1-281(C). Moreover, under Code § 16.1-281(E), the juvenile court judge may, on the

-10-

judge's own motion, "review the status" of the child.  Thus, the scope of the judge's power to oversee the provision of treatment and care to a particular child is not limited to a review of the plan submitted by Social Services or the FAPT.  The General Assembly clearly intended to provide the juvenile courts, under Code § 16.2-281, broad authority to oversee the status of children in the custody of Social Services.

"Statutes must be construed consistently with each other and so as to reasonably and logically effectuate their intended purpose."  Nelson v. County of Henrico, 10 Va. App. 558, 561, 393 S.E.2d 644, 646 (1990).  We cannot conclude that in Code § 16.1-278.4(6)(c), the General Assembly intended to divest the juvenile court of the authority it granted to the juvenile court in Code § 16.1-281.  Rather, we hold that the General Assembly intended to provide that an order granting an agency custody of a child gives that agency the power, as against the child's parents, relatives, and other interested parties, to determine appropriate placements for that child.  The General Assembly did not intend to prohibit the juvenile court from exercising the authority granted to it in Code § 16.1-281.

Accordingly, we hold that the juvenile court judge had the authority to enter the decree ordering Social Services to provide treatment for the minor in a residential treatment facility.[6]

_____
[6]Social Services argues on brief that the FAPT was an essential party to the proceedings.  However, Social Services lacks standing to raise the failure to include another party.  Moreover, Social Services was named as a party and properly received notice of

–11–

The circuit court order reversing that decree was in error.  We, therefore, reverse the order and remand the case to the circuit court for an order consistent with this opinion.

<u>Reversed</u>.

---

these proceedings.  Accordingly, we will not address this contention.