COURT OF APPEALS OF VIRGINIA


Present:   Judges Benton, Frank and Felton
Argued at Chesapeake, Virginia


WANDA STRONG

v.       Record Nos. 1287-04-1, 1288-04-1,
         1289-04-1, 1290-04-1 and 1291-04-1

HAMPTON DEPARTMENT OF SOCIAL SERVICES            OPINION BY
                                                 JUDGE JAMES W. BENTON, JR.
KEVIN STRONG                                     MARCH 29, 2005

v.       Record No.  1347-04-1

HAMPTON DEPARTMENT OF SOCIAL SERVICES


            FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
                        Wilford Taylor, Jr., Judge

            Fred C. Hardwick, II (Eusner & Hardwick, P.C., on brief), for
            appellant Wanda Strong.

            Carter Phillips (Weisbrod and Phillips, P.C., on brief), for appellant
            Kevin Strong.

            Lesa J. Yeatts, Deputy City Attorney; Lawrence A. Martin,
            Guardian *ad litem* for the minor children (City Attorney's Office;
            Coyle & Martin, on briefs), for appellee.


        The trial judge terminated the parental rights of Wanda Strong and Kevin Strong with

respect to their five children.  Both the mother and the father contend that the trial judge erred in

terminating their parental rights because no foster care plan had been filed "pursuant to [Code]

§ 16.1-281, which documents termination of residual parental rights as being in the best interests

of the child[ren]."  Code § 16.1-283.  The parents also contend the evidence was not sufficient to

prove the elements of Code §§ 16.1-283(B) and 16.1-283(C), the statutory bases upon which the

trial judge terminated their parental rights.  We agree that the Hampton Department of Social

Services filed a foster care plan that did not satisfy the requirements of Code § 16.1-283; therefore, we reverse the orders terminating the parental rights.

I.

The record establishes that a judge of the Juvenile and Domestic Relations District Court of the City of Hampton ordered the removal of five children from the care of their mother and their father on October 12, 2000. The judge found that the children were abused and neglected, and he ordered the children into the custody of the Hampton Department of Social Services. Later, the Department filed a foster care plan with a goal of "Return to Parent." The Department returned the children to the physical custody of the mother and father in 2002; however, the Department retained legal custody of the children until the judge entered further orders on November 12, 2002. The district court judge also entered a protective order, which required the parents to cooperate with the Department in the provision of reasonable services and programs and to refrain from any offensive conduct toward the children. On December 12, 2002, the district court judge entered a preliminary protective order against the father, barring him from any contact with one of the children because of physical injury to her and removing the father from the household.

On January 15, 2003, the district court judge granted petitions removing the children from the home because of abuse and neglect, and he dismissed the protective order. Two months later, on March 25, 2003, a hearing was held in the district court concerning the foster care plans the Department filed. The plans recommended the goal of placing all five children with relatives. Following the hearing, the district court judge rejected the plans and ordered the Department to file another plan. The judge also ordered the mother and father to submit to parental capacity evaluations.

On May 23, 2003, the Department prepared foster care plans recommending a goal of returning one child to the parents and placing the remaining four children with relatives. Following a hearing on June 17, 2003, the district judge made findings of fact, including that the children had remained in the jurisdiction of the district court for various reasons since October 12, 2000, that the mother and father did not always cooperate with the Department, that no relative placement could be stable based upon the past behavior of the mother and the father, that placement with relatives was not in the best interest of the children, and that termination of parental rights was in the best interest of the children. The district judge then entered an order that "approved" the plan with a "revised goal of adoption." The judge's orders also "directed [the Department] to file petitions to terminate parental rights."

On September 12, 2003, the Department filed petitions to terminate parental rights. The district judge entered orders terminating the parental rights of the mother and the father on December 11, 2003. The mother and the father appealed these orders to the circuit court. In the circuit court, both the mother and the father objected, based on the Department's failure to comply with the requirements of Code § 16.1-283. They argued the record did not contain a foster care plan providing for termination of their parental rights. The judge denied this motion. At the conclusion of the evidence, the circuit judge adopted the district judge's findings of fact and found clear and convincing evidence that terminating the parental rights would be in the best interest of the children.

II.

In pertinent part, Code § 16.1-283 provides that "[n]o petition seeking termination of residual parental rights shall be accepted by the court prior to the filing of a foster care plan, pursuant to [Code] § 16.1-281, which documents termination of residual parental rights as being in the best interests of the child." We specifically addressed in Rader v. Montgomery County

- 3 -

Dep't of Social Servs., 5 Va. App. 523, 365 S.E.2d 234 (1988), the necessity of following the statutory procedures, and we referenced Code § 16.1-283.

> That scheme provides detailed procedures designed to protect the rights of the parents and their child. These procedures must be strictly followed before the courts are permitted to sever the natural and legal bond between parent and child. Except in the case of abandonment and where the identity of the parents cannot be determined, that scheme provides that after the filing of a foster care plan which documents termination of residual parental rights as being in the best interests of the child, and after proper notice to the parents and an opportunity to be heard, the courts may terminate residual parental rights based on specified statutory factors, such as abuse, neglect or failure to provide for essential needs of the child.

Rader, 5 Va. App. at 526, 365 S.E.2d at 235-36. Recognizing that "'termination of parental rights is a grave, drastic, and irreversible action,'" Martin v. Dep't of Social Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986) (citation omitted), we have held that "[i]t is implicit in the statutory scheme . . . that the natural parent, at subsequent hearings concerning that child, is entitled to prior and specific notice of the disposition sought by the agency in whose custody a child has been placed." Id. at 22, 348 S.E.2d at 17. In view of the parental interest at stake in these proceedings, "due process requires the trial courts to comply strictly with the statutory scheme for disposition of child custody cases." Rader, 5 Va. App. at 528, 365 S.E.2d at 237 (citing Martin, 3 Va. App. at 22, 348 S.E.2d at 17).

The record in this case establishes that the Department never filed a foster care plan that recommended termination of the parental rights of the mother or the father. Indeed, on brief, the Department "concedes that the plans as they were filed on May 23, 2003, did not document that termination of parental rights was in the best interest of the children." Nevertheless, the Department contends that the district judge's order satisfied the mandate of Code § 16.1-283 because although the order "approved" its foster care plans, providing for the return of one child

- 4 -

to the parents and placement of four children with relatives, the order also revised the plan by mandating a "goal of adoption." We disagree that the statutory mandate has been followed.

The statute places on the Department the obligation to prepare a foster care plan. See Code §§ 16.1-281 and 16.1-282. These statutory provisions are designed to place with the Department, the administrative entity with expertise and resources to aid families and to provide for foster care, the initial determination that termination of parental rights is the recommended remedy. "The foster care plan documenting the need for termination can only be filed by the local board of public welfare or social services or the child welfare agency that has been given custody of the child." Stanley v. Dep't of Social Servs., 10 Va. App. 596, 602, 395 S.E.2d 199, 202 (1990). "[N]othing in the statutory scheme . . . removes the burden on [the Department] to establish compliance with the statutes." Rader, 5 Va. App. at 527, 365 S.E.2d at 236.

> Code § 16.1-283 . . . directly limit[s] the right to initiate a termination petition by also requiring the filing of a foster care plan submitted in conformance with Code § 16.1-281, documenting termination as being in the best interests of the child. Therefore, under Code § 16.1-283, no termination petition can be accepted by the court unless the local board of public welfare or social services, or other child welfare agency which has custody of the child, presents the court with a foster care plan recommending termination as being in the best interests of the child.

Stanley, 10 Va. App. at 603, 395 S.E.2d at 202. Thus, in Stanley, where the most recent foster plan did not recommend termination of parental rights but, rather, recommended placing the child with a relative, 10 Va. App. at 600, 395 S.E.2d at 201, we held that the trial judge was not authorized to terminate the parental rights. Id. at 605, 395 S.E.2d at 204.

To accomplish the legitimate governmental objective and to protect the parental interests, the Department and the courts are required to follow the statutory scheme the legislature enacted. In addition to assuring that the Department performs its legitimate functions, the requirement "to comply strictly with the statutory scheme" guarantees proper notice is given to the parents before

the irreversible disposition of terminating parental rights occurs.  Rader, 5 Va. App. at 528, 365 S.E.2d at 237.  Succinctly stated:  "Due process demands it."  Martin, 3 Va. App. at 23, 348 S.E.2d at 17.

In these cases, the district judge "approved" and "revised" a foster care plan in which the Department had not recommended termination of parental rights.  Thus, if the Department wished to pursue termination of the parental rights, the Department had a duty to first file a foster care plan in the district court with the goal of terminating parental rights in compliance with Code § 16.1-283.  The statute mandates that this be done before filing a petition to terminate parental rights.  We hold that because the Department did not file a foster care plan that recommended termination of parental rights in this case, the circuit judge was not authorized to terminate the parental rights of the mother or the father.  In view of this holding, we need not address the further issue of the sufficiency of the evidence.  For these reasons, we reverse the orders terminating the parental rights of the mother and father with respect to the children, and we dismiss the petitions.

Reversed and dismissed.