648 S.E.2d 328

## LYNCHBURG DIVISION OF SOCIAL SERVICES

v.

## James COOK, Sandra Cook and Jimmy Cook.

### Record No. 2792-05-3.

Court of Appeals of Virginia,
Richmond.

Aug. 14, 2007.

Susan L. Hartman (Mark B. Arthur, Guardian ad litem for the minor child; City Attorney's Office, on briefs), for appellant.

Betsy H. Phillips, Rustburg, for appellees James and Sandra Cook.

No brief or argument for appellee Jimmy Cook.

Present: Felton, C.J., and BENTON, ELDER, FRANK, HUMPHREYS, CLEMENTS, KELSEY, McCLANAHAN, HALEY, PETTY and BEALES, JJ.

UPON A REHEARING EN BANC

McCLANAHAN, Judge.

The Lynchburg Division of Social Services ("DSS") appeals a custody order granting custody of a child to her grandparents, James and Sandra Cook (the "Cooks"). DSS argues that because the child was placed in the custody of DSS pursuant to an emergency removal order alleging abuse and neglect, and then made subject to a foster care plan, the trial court erred in subsequently transferring custody to the Cooks pursuant to certain custody related statutes (Code §§ 16.1–241(A)(3), 16.1–278.15, 20–124.2 and 20–124.3) separate and apart from the foster care statutory scheme (Code §§ 16.1–281 through –282.1). A panel majority of this Court agreed with DSS and reversed the decision of the trial court. We granted a petition for rehearing *en banc* and stayed the mandate of the panel decision. Upon rehearing *en banc*, we affirm the trial court.

## BACKGROUND

On appeal, we view the evidence in the light most favorable to the Cooks, the prevailing parties below, and grant to them all reasonable inferences fairly deducible therefrom. *Logan v. Fairfax County Dep't of Human Dev.*, 13 Va.App. 123, 128, 409 S.E.2d 460, 463 (1991). On April 7, 2004, DSS removed the child from her parents' custody, based on allegations against the father, and placed her in foster care. The Juvenile and Domestic Relations District Court of the City of Lynchburg ("JDR court") entered an emergency removal order on April 8, 2004. On July 1, 2004, the JDR court entered an order transferring custody to DSS, and approving a foster care plan with the goal of "return to home." On January 4, 2005, the JDR court approved a foster care plan with a new goal of "continued foster care," and scheduled a permanency planning hearing to be held on May 27, 2005.[1]

---

1. The requirements for the foster care plan are provided in Code § 16.1–281, the foster care review hearing in Code § 16.1–282, and the permanency planning hearing in Code § 16.1–282.1.

In the meantime, three different parties filed petitions for custody of the child. On April 6, 2004, the child's mother, Amy Cook ("mother"), filed for custody.[2] On April 8, 2004, the Cooks and the child's father, Jimmy Cook ("father"), filed separate petitions for custody. Each of the petitions specifically referenced the JDR court's jurisdiction over custody matters under Code § 16.1–241(A)(3)[3]—separate and apart from the statutory scheme governing the pending foster care plan. On March 4 and March 11, 2005, the JDR court conducted hearings on the petitions. After finding it to be in the child's best interest, pursuant to Code §§ 16.1–278.15, 20–124.2, and 20–124.3, the JDR court transferred custody from DSS to the Cooks, by order dated March 11, 2005. The custody order also allowed supervised visitation with the mother, and prohibited visitation with the father. The mother, father, and DSS appealed.

DSS filed a pre-trial motion in circuit court to suspend execution of the JDR court's March 11, 2005 order pending a trial *de novo*. By order dated April 12, 2005, the circuit court denied the motion and incorporated the JDR court's order into its own interlocutory order, with modifications expediting the Cooks' visitation schedule with the child before she commenced residing with them, then set for no later than May 30, 2005.

On May 25, 2005, the circuit court heard argument on DSS's motion to remand based on a procedural challenge to the JDR court's March 11, 2005 custody order. DSS contended the JDR court "lacked jurisdiction" to hear the Cooks' custody petition because of the pending foster care plan, and requested that the circuit court thus remand the case to the JDR court for a permanency planning hearing, pursuant to the

---

2. The mother filed her petition the day she purportedly separated from her husband, the child's father. DSS removed the child from the home the following day.

3. Code § 16.1–241(A)(3) grants the JDR court jurisdiction over custody matters involving a child "[w]hose custody . . . is a subject of controversy or requires determination."

foster care statutes. Noting that disposition of the child's custody had proceeded in JDR court on "two track[s] . . . at the same time," the circuit court ruled there was no "procedural defect" in the JDR court, which had the statutory authority to award custody of the child to the Cooks apart from the foster care plan. Accordingly, the circuit court further ruled there was no requirement or need for a permanency planning hearing in JDR court. The circuit court also granted the mother certain periods of unsupervised visitation with the child.

After a two-day trial in October 2005, the circuit court, like the JDR court, transferred custody to the Cooks upon finding it to be in the child's best interest, under Code §§ 20–124.2 and 20–124.3.[4] In addition, the court allowed unsupervised visitation with the mother, and supervised visitation with the father, as long as both remained in counseling. The court denied the father's petition for custody, and reserved the right to revisit the mother's petition for custody at a later date. The court also held that DSS no longer "need[ed] to be involved" with the case. DSS then filed this appeal.

## ANALYSIS

DSS argues both the JDR court and the circuit court "lacked jurisdiction" to consider the custody petitions filed by the Cooks and the child's parents.[5] Because the child was the subject of a foster care plan filed with the JDR court pursuant to Code § 16.1–281, DSS contends the disposition of the child

---

4. The circuit court specifically noted its review of the factors required to be considered under Code § 20–124.3 when determining the best interest of the child and, in doing so, found *inter alia*, that "the child's doing well in [the Cooks'] home" and that the court had "every confidence that they'll be able to provide [the child] good support."

5. DSS does not actually argue that the lower courts lacked subject matter jurisdiction in granting the Cooks' custody petition, but rather argues that the courts erred in their exercise of authority over the child's custody by applying the wrong custody related statutes when awarding custody to the Cooks. *See Nelson v. Warden*, 262 Va. 276, 552 S.E.2d 73 (2001) (explaining the distinction between subject matter jurisdiction and the authority to exercise that jurisdiction).

could only be decided under the procedures set forth in the foster care statutes. Under those procedures, according to DSS, the JDR court was limited to either reviewing the child's status, reviewing the foster care plan, or conducting a permanency planning hearing. DSS thus contends that neither the JDR court, nor the circuit court on appeal, had the authority to "deviate" from the foster care statutory scheme by entertaining the parties' custody petitions filed pursuant to Code § 16.1–241(A)(3), and awarding custody to the Cooks.

As a corollary to this argument, DSS further argues that the courts below applied the wrong standard in determining what was in the child's best interest, and thereby transferring custody to relatives and awarding visitation to both mother and father, pursuant to Code §§ 16.1–278.15(F), 20–124.2(B), and 20–124.3. Instead, according to DSS, the courts were limited to applying standards set forth in the foster care statutes regarding an abused or neglected child's contact or reunification with a parent, or placement of the child with a relative, as a foster care parent, pursuant to Code §§ 16.1–281(C1), 16.1–282(D1), and 16.1–282.1(A1). We disagree.[6]

### A. Custody Award

An issue of statutory construction, as here presented, is "a pure question of law which we review *de novo*" on appeal. *Conyers v. Martial Arts World of Richmond, Inc.*, 273 Va. 96, 104, 639 S.E.2d 174, 178 (2007) (citations omitted). Under well established principles, "[w]hen the language of a statute is unambiguous, we are bound by the plain meaning of that language." *Id.* In those instances, we do not "resort to

---

6. Because we decide it was appropriate for the lower courts to proceed under Code §§ 16.1–241(A)(3) and 16.1–278.15, the fact that the child was the subject of a foster care plan was not controlling and the related statutes were not applicable to the courts' adjudication of the three custody petitions before them. Consequently, DSS's other arguments, which are erroneously premised on mandatory application of that plan and related statutes in this case, are rendered moot and will not be considered. *See Commonwealth v. Harley*, 256 Va. 216, 219–20, 504 S.E.2d 852, 854 (1998) (noting that appellate courts do not consider moot issues).

the rules of statutory interpretation." *Last v. Virginia State Bd. of Med.*, 14 Va.App. 906, 910, 421 S.E.2d 201, 205 (1992). In other words, "when the General Assembly has used words of a definite import, we cannot give those words a construction that amounts to holding that the General Assembly meant something other than that which it actually expressed." *Britt Constr., Inc. v. Magazzine Clean, LLC*, 271 Va. 58, 62–63, 623 S.E.2d 886, 888 (2006) (citations omitted).

Title 16.1 of the Code provides several procedural means of obtaining child custody. Here, DSS initially obtained in the JDR court custody of the Cooks' granddaughter for placement in foster care, pursuant to Code §§ 16.1–281 through –282.1. The day after the child was taken from her parents by DSS, the Cooks filed their own petition for custody of the child in JDR court and were ultimately awarded custody, pursuant to Code §§ 16.1–241(A)(3), 16.1–278.15, 20–124.2, and 20–124.3.

Code § 16.1–241 sets forth the JDR court's subject matter jurisdiction, including, among other things, "[t]he custody, visitation, support, control or disposition of a child . . . [which] is a subject of controversy or requires determination." [7] Code § 16.1–241(A)(3). This statute further plainly states, in dispositive terms: "The authority of the juvenile court to consider a petition involving the custody of a child *shall not be proscribed or limited* where the child has previously been awarded to the custody of a local board of social services," as in the instant case. Code § 16.1–241(A) (emphasis added).

Code § 16.1–278.15 then provides, in relevant part, that "[i]n cases involving the custody, visitation or support of a child pursuant to subdivision A 3 of § 16.1–241, the court may make *any* order of disposition to protect the welfare of the child and family as may be made by the circuit court." Code § 16.1–278.15(A) (emphasis added). Specifically, the JDR court "may award custody upon petition to any party with a

---

7. This jurisdictional authority is distinct from that granted to the JDR court under this same statute regarding "[t]he custody, visitation, support, control or disposition of a child . . . [w]ho is alleged to be abused [or] neglected. . . ." Code § 16.1–241(A)(1).

legitimate interest therein, including, but not limited to, grandparents . . . ." Code § 16.1–278.15(B). This statute then reiterates verbatim that the JDR court's authority to consider such a petition for child custody *"shall not be proscribed or limited* where the custody of the child has previously been awarded to a local board of social services." *Id.* (emphasis added).

■ In filing the petition for custody of their granddaughter under this statutory scheme, the Cooks were not seeking to merely "step into the shoes" of a foster care parent under a foster care plan, and were not limited to such status upon their petition. Rather, pursuant to the express terms of these statutes, the Cooks were entitled to bring a direct, independent action seeking a change in the child's custody from DSS to the Cooks, separate and apart from any foster care plan. And both the JDR court and the circuit court, upon appeal, were expressly authorized to adjudicate the Cooks' petition and award them custody. In Code §§ 16.1–241(A) and 16.1–278.15(B), the General Assembly has stated unequivocally that the JDR court's authority to consider such a petition is not "proscribed or limited" by the fact that "custody of the child has previously been awarded to [DSS]." Consequently, through these provisions, the General Assembly has made the foster care plan statutes subordinate to the statutes under which the Cooks were awarded custody of their granddaughter, and did not conflate the two statutory schemes.

■ Given that the courts below had the authority to adjudicate the Cooks' petition and award them custody apart from the foster care plan, the courts also correctly applied the "best interest of the child" standard in making that award, pursuant to Code §§ 16.1–278.15(F), 20–124.2(B), and 20–124.3, rather than the standard for approving foster care parents, which did not apply.[8] Under Code § 16.1–278.15(F),

---

8. In other words, the courts below were not compelled, as DSS contends, to apply the standards and make the findings required for placing a child with a relative as a foster care parent, pursuant to Code §§ 16.1–281(C1), 16.1–282(D1), and 16.1–282.1(A1). We note, howev-

the court is directed "[i]n any case or proceeding involving the custody or visitation of a child" to "consider the best interest of the child, including the considerations for determining custody and visitation set forth in Chapter 6.1 (§ 20–124.1 et seq.) of Title 20."

Code § 20–124.2, in turn, provides, in relevant part: that "[i]n any case in which custody or visitation of minor children is at issue, whether in a circuit court or district court, the court shall provide prompt adjudication, upon due consideration of all the facts, ... [including] custody and visitation arrangements ..."; that "[i]n determining custody, the court shall give primary consideration to the best interests of the child"; and that "[t]he court shall give due regard to the primacy of the parent-child relationship but may upon a showing by clear and convincing evidence that the best interest of the child would be served thereby award custody or visitation to any other person with a legitimate interest," including grandparents, as set forth in Code § 20–124.1. Code § 20–124.2(A) and (B).

Code § 20–124.3 then sets forth ten factors the court shall consider "[i]n determining best interests of a child for purposes of determining custody." Those factors include, among others, "[t]he needs of the child, giving due consideration to other important relationships of the child, including but not limited to ... extended family members;" "[a]ny history of family abuse ...;" and "[s]uch other factors as the court deems necessary and proper to the determination." *Id.* Here, the circuit court, after noting its review of the factors under this statute and in determining that awarding custody to the Cooks was in the child's best interest, specifically found, *inter alia,* that "the child's doing well in [the Cooks'] home" and that the court had "every confidence that they'll be able to provide [the child] good support."

---

er, that Code § 16.1–282(D) incorporates the "best interest of the child" standard as part of the court's review of a foster care plan.

In sum, both the JDR court and the circuit court acted pursuant to express statutory authority in adjudicating the Cooks' petition for custody of their granddaughter, and in awarding them custody, upon finding that to be in the child's best interest.

### B. Attorney's Fees

█ The Cooks request costs and attorney's fees associated with this appeal. We have recognized an award of attorney's fees associated with an appeal in matters properly brought before the JDR court may be appropriate under Code § 16.1–278.19. *See Cartwright v. Cartwright,* 49 Va.App. 25, 31, 635 S.E.2d 691, 694 (2006). However, we cannot say DSS's position in this case was unreasonable, *see O'Loughlin v. O'Loughlin,* 23 Va.App. 690, 695, 479 S.E.2d 98, 100 (1996), because "the litigation addressed appropriate and substantial issues[,]" *Estate of Hackler v. Hackler,* 44 Va.App. 51, 75, 602 S.E.2d 426, 438 (2004). Therefore, we do not award attorney's fees associated with this appeal.

### *CONCLUSION*

For these reasons, we affirm the decision of the circuit court.

*Affirmed.*

ELDER, J., with whom BENTON and HALEY, JJ., join, concurring.

I concur in the result reached by the majority. However, I write separately to articulate my understanding of the interplay between the findings required for placement of a child with a non-parent "party" or "person with a legitimate interest" pursuant to the more general child custody statutes, *see* Code §§ 16.1–241(A)(3), 16.1–278.15, 20–124.2, 20–124.3, and the findings required for placement of a child with a foster care parent pursuant to the abuse and neglect statutes, *see* Code §§ 16.1–281 to –282.1.

In my view, the criteria in Code §§ 20–124.2 and 20–124.3 for determining what is in the best interests of the child set out the overarching standard to be applied in any case involving a custody determination, but all best interests determinations are made in the context in which they arise. Neither Code § 16.1–282(D1) nor Code § 20–124.2 is intended to provide an all-inclusive list of factors to be considered in making the "best interests" determination. *See* Code § 20–124.3(10) (providing "the court shall consider," *inter alia*, certain factors enumerated (1) to (9) and "such other factors as the court deems necessary and proper to the determination").

The standard for approving a foster care placement set out in Code § 16.1–282(D) expressly requires compliance with the "best interests of the child" test and specifically incorporates the criteria of Code § 16.1–282(D1), which, although not specifically listed in Code §§ 20–124.2 or 20–124.3, are nevertheless subsumed in the best interests analysis. Any finding, pursuant to the general custody statutes, that an award of custody to "a relative other than the child's prior family," Code § 16.1–282(D1), is in the child's best interests includes an implicit finding that the relative

> (i) is . . . willing and qualified to receive and care for the child; (ii) is willing to have a positive, continuous relationship with the child; (iii) is committed to providing a permanent, suitable home for the child; and (iv) is willing and has the ability to protect the child from abuse and neglect. . . .

*Id.* Further, Code § 20–124.2 expressly provides that, in the case of an award of custody to a non-parent, the best interest finding must be made by clear and convincing evidence rather than by a mere preponderance, as is required by Code § 16.1–282(D1) for the above four specific criteria.

Thus, here, the court's award of custody included an implicit finding, by clear and convincing evidence, that the Cooks were "willing and qualified to receive and care for the child; . . . willing to have a positive, continuous relationship with the child; . . . committed to providing a permanent, suitable home for the child; and . . . willing and . . . [able] to protect the

child from abuse and neglect," as set out in Code § 16.1–282(D1). The court was not bound by the requirement of Code § 16.1–282(D1) to set out any subsidiary findings in its order because it proceeded under Code §§ 20–124.2 and 20–124.3 instead.

HUMPHREYS, J. with whom PETTY, J. joins, concurring in part, dissenting in part, and dissenting from the judgment.

I agree with the majority that the JDR court and the circuit court had jurisdiction to adjudicate the issue of custody with regard to the child. However, because I believe that the foster care statutes—specifically, Code §§ 16.1–281 and 16.1–282—must govern the manner in which the trial court must address the issue of custody of a child who has been deemed abused and neglected, I respectfully dissent from the majority view on the remaining issues.

In this case, DSS argues that the trial court erred in transferring custody to the Cooks pursuant to Code §§ 16.1–278.15 and 20–124.3. Specifically, DSS contends that once a child is taken into custody, and is subject to a foster care plan, the trial court is required to make findings pursuant to Code § 16.1–282 in order to transfer custody to an interested party, even a relative. I agree. Moreover, I would further hold that although an abused or neglected child has been placed with a relative or other interested party, DSS is not relieved of its duty to comply with the statutory mandates of Code §§ 16.1–281, 16.1–282, and 16.1–282.1, and thus the trial court erred in holding that DSS no longer "need[ed] to be involved."

## A. Custody Standard

A child who is taken into custody pursuant to an emergency removal order, and then placed in the custody of social services, is statutorily subject to a foster care plan. Code § 16.1–281; see also Strong v. Hampton Dep't of Soc. Servs., 45 Va.App. 317, 321–22, 610 S.E.2d 873, 875 (2005) ("The statute [Code § 16.1–281] places on the Department the obligation to prepare a foster care plan."). In order for the court to transfer custody of a child who is deemed abused or neglected,

either pursuant to a foster care plan, or a petition for custody, the court must make specific factual findings. Specifically, Code § 16.1–281 requires that,

> *[a]ny* order transferring custody of the child to a relative other than the child's prior family shall be entered only upon a finding, based upon a preponderance of the evidence, that the relative is one who, after an investigation as directed by the court, (i) is found by the court to be willing and qualified to receive and care for the child; (ii) is willing to have a positive, continuous relationship with the child; (iii) is committed to providing a permanent, suitable home for the child; and (iv) is willing and has the ability to protect the child from abuse and neglect; *and the order shall so state.* The court's order transferring custody to a relative should further provide for, as appropriate, any terms or conditions which would promote the child's interest and welfare; ongoing provision of social services to the child and the child's custodian; and court review of the child's placement.

(Emphasis added.)

Noticeably absent from this statute is any reference to the general custody statute relied upon by the majority, Code § 20–124.3, regarding the "best interests of the child" standard. In fact, none of the statutes addressing the foster care plan, the foster care review hearing, or the permanency planning hearing, incorporate, by reference, the general standard for determining custody. *See* Code §§ 16.1–281, 16.1–282, and 16.1–282.1.[9] Instead, the statutes set forth a more

---

9. In footnote 8, the majority notes that "Code § 16.1–282(D) incorporates the 'best interests of the child' standard as part of the court's review of a foster care plan." However, *the entire sentence is as* follows:

> At the conclusion of the hearing, the court shall, upon the proof adduced in accordance with the best interests of the child *and subject to the provisions of subsection D1,* enter any appropriate order of disposition consistent with the dispositional alternatives available to the court at the time of the original hearing.

stringent standard that the court must follow in order to transfer the custody of an abused or neglected child to a relative. Moreover, rather than specifying that these findings of fact are limited to orders resulting from a foster care review hearing or a permanency planning hearing, the statute requires that *any* order transferring custody of a child in foster care to a relative contain specific findings of fact.

The majority holds that because Code §§ 16.1–241(A) and 16.1–278.15(B) state that the JDR court's authority to consider a petition for custody "shall not be proscribed or limited where the custody of the child has previously been awarded to [DSS]," the trial court correctly entertained and disposed of the custody petition pursuant to Code §§ 20–124.2 and 20–124.3, and therefore any discussion of the foster care statutes is moot. Moreover, the majority holds that the language contained in Code §§ 16.1–241(A) and 16.1–278.15(B) manifests the General Assembly's intent not to conflate, in any way, the two statutory schemes, and to make the foster care statutes subordinate to the general custody statutes. I disagree.

---

Code § 16.1–282(D) (emphasis added). Subsection D1 reiterates the language set forth in Code § 16.1–281. Specifically, subsection D1 states,

> Any order transferring custody of the child to a relative other than the child's prior family shall be entered only upon a finding, based upon a preponderance of the evidence, that the relative is one who, after an investigation as directed by the court, (i) is found by the court to be willing and qualified to receive and care for the child; (ii) is willing to have a positive, continuous relationship with the child; (iii) is committed to providing a permanent, suitable home for the child; and (iv) is willing and has the ability to protect the child from abuse and neglect; and the order shall so state. The court's order transferring custody to a relative should further provide for, as appropriate, any terms and conditions which would promote the child's interest and welfare; ongoing provision of social services to the child and the child's custodian; and court review of the child's placement.

Clearly, the "best interests of the child" will always be of importance when determining custody of a child. However, in the case of an abused or neglected child who has been placed in the custody of social services for his or her protection, the statute requires that the court make specific findings of fact to maintain the safety and welfare of the child.

Although the majority correctly notes that the trial court has jurisdiction over "[t]he custody, visitation, support, control or disposition of a child ... [which] is a subject of controversy or requires determination," *see* Code § 16.1–241(A)(3), it seemingly dismisses, in a footnote, the fact that Code § 16.1–241(A)(1) grants the trial court jurisdiction over "[t]he custody, visitation, support, control or disposition of a child ... *[w]ho is alleged to be abused [or] neglected ...*," *see* Code § 16.1–241(A)(1) (emphasis added). The majority then erroneously relies, as did the circuit court, upon Code § 16.1–241(A)(3) to determine that the circuit court had authority to dispense with the issue of custody without taking into consideration the standards set forth in the foster care statutes, specifically Code § 16.1–281. In my view, the error is two-fold.

First, construing these statutes in the manner suggested by the majority fails to take into consideration an important canon of statutory construction. That is, "a statute [must] be construed from its four corners and not by singling out a particular word or phrase." *First Virginia Bank v. O'Leary*, 251 Va. 308, 312, 467 S.E.2d 775, 777 (1996). Moreover, "a legislative enactment 'should be interpreted, if possible, in a manner which gives meaning to every word.'" *Id.* (citing *Monument Assoc. v. Arlington County Bd.*, 242 Va. 145, 149, 408 S.E.2d 889, 891 (1991)).

Here, as the majority notes, the General Assembly has granted jurisdiction to the juvenile and domestic relations district courts over the custody disposition of a child who is alleged to be abused or neglected *separate and apart* from the jurisdiction over the disposition of a child whose custody is the subject of controversy. Under the rules of statutory construction, had the legislature intended for subsection (A)(3) to govern the cases where a child is alleged to be abused or neglected, it would not have included subsection (A)(1), which *specifically* addresses such cases. To hold that the trial court did not err in entertaining the issue of custody of an abused and neglected child pursuant to Code § 16.1–241(A)(3) renders Code § 16.1–241(A)(1) meaningless.

Second, the majority implicitly contends that construing the statutes as I suggest would proscribe, or limit, the trial court's authority to consider a custody petition by an interested party for a child who is alleged to be abused and neglected. However, in my view, the statute's plain meaning indicates that once a child is placed in the custody of social services, the child's placement with DSS does not proscribe or limit the circuit court's ability to *consider* a petition for custody. In other words, the child's placement does not remove the trial court's jurisdiction over issues such as custody.

In *Walla v. Prince William County Dep't of Social Servs.*, 25 Va.App. 356, 363–64, 488 S.E.2d 653, 657 (1997), this Court addressed whether a juvenile court judge had the authority to consider a FAPT report and order social services to obtain treatment for a minor in a residential treatment facility. Social services argued that the juvenile court judge divested himself of that authority when he granted social services legal custody of the minor under Code § 16.1–278.4(6)(c).[10] *Id.* However, this Court held that

the juvenile court judge retained the authority to "review the status" of the minor even after she was placed in the custody of Social Services. Code § 16.1–281(E) expressly states that children in the custody of Social Services are those the juvenile court judge can review pursuant to that section. *See id.* (giving the juvenile court judge the power "to review the status of children in the custody of local boards of . . . social services").

Contrary to the argument of Social Services, Code § 16.1–278.4(6)(c) does not mandate a different result. The statement that "the [local] board [of social services] to which the child is committed shall have the final authority to determine the appropriate placement for the child," Code § 16.1–278.4(6)(c), was intended to give Social Services the power to override the wishes or recommendations of the child's parents, the FAPT, or any other interested party. That

---

10. This statute states that social services "shall have the final authority to determine the appropriate placement." Code § 16.1–278.4(6)(c).

section was not intended to divest the juvenile court judge of power to review the status of the minor.

*Id.* at 363, 488 S.E.2d at 657. Moreover, in *Walla* we continued, stating, "the scope of the judge's power to oversee the provision of treatment and care to a particular child is not limited to a review of the plan submitted by Social Services," and "[t]he General Assembly clearly intended to provide the juvenile courts, under Code § 16.[1]–281, broad authority to oversee the status of children in the custody of Social Services." *Id.* at 364, 488 S.E.2d at 657.

Likewise, in my view, Code § 16.1–281 was not intended to "divest" the trial court of jurisdiction over the custody matter, nor was it intended to limit or proscribe the trial court's authority to *entertain* the custody matter. Nor does Code § 16.1–281 limit the trial court to considering just the foster care plan or the objectives set forth by DSS. In fact, Code § 16.1–241 makes it perfectly clear that the trial court has jurisdiction over custody matters. And, in my view, when read in conjunction with the other pertinent statutes, Code § 16.1–281 simply requires that when the custody of an abused and neglected child is at issue, the trial court must make specific written findings of fact, designed to protect the child from the dangers for which he or she was removed from the home. *See* Code §§ 16.1–281, 16.1–282, 16.1–282.1.[11] In

---

11. Even Code § 16.1–278.2 contains similar language to the foster care statutes. According to Code § 16.1–278.2, once a court enters an order permitting DSS to place an abused or neglected child, DSS may transfer custody of the child to a relative only upon a finding that,

the relative or other interested individual is one who, after an investigation as directed by the court, (i) is found by the court to be willing and qualified to receive and care for the child; (ii) is willing to have a positive, continuous relationship with the child; (iii) is committed to providing a permanent, suitable home for the child; and (iv) is willing and has the ability to protect the child from abuse and neglect; and the order shall so state. The court's order transferring custody to a relative or other interested individual should further provide for, as appropriate, any terms or conditions which would promote the child's interest and welfare; ongoing provision of social services to the child and the child's custodian; and court review of the child's placement.

other words, the trial court is free to decide the issue of custody as it sees fit, so long as it incorporates into the record a finding that

> the relative or other interested individual is one who, after an investigation as directed by the court, (i) is found by the court to be willing and qualified to receive and care for the child; (ii) is willing to have a positive, continuous relationship with the child; (iii) is committed to providing a permanent, suitable home for the child; and (iv) is willing and has the ability to protect the child from abuse and neglect.

Code § 16.1–278.2(A1). Therefore, I would hold that the trial court erred in addressing the issue of custody pursuant to Code §§ 16.1–241(A)(3) and 16.1–278.15, and in failing to recognize that Code § 16.1–281 applied to the disposition of the petition for custody filed by the Cooks.

Nevertheless, I recognize that under the harmless error doctrine, this Court must affirm the judgment of the trial court if "the error complained of could not have affected the result." *See Rhoades v. Painter,* 234 Va. 20, 24, 360 S.E.2d 174, 176 (1987). However, in this case, DSS asserts, and the record reflects, that the trial court failed to make a finding that the Cooks were "willing and ha[d] the ability to protect the child from abuse and neglect," as required by Code § 16.1–281. In my view, because the statute requires the court to make this specific finding, this error is not harmless. Therefore, I would hold that the trial court erred in failing to make the required findings, as mandated by Code § 16.1–281.

## B. Continuation of the Foster Care Plan

According to Code § 16.1–282, the court "shall" conduct a foster care review hearing for "a child who was the subject of a foster care plan filed with the court pursuant to § 16.1–281." The court must conduct this hearing "if the child ... is under the legal custody of ... social services or a child welfare agency and has not had a petition to terminate parental rights

---

Code § 16.1–278.2(A1).

granted, filed or ordered to be filed on the child's behalf." Code § 16.1–282.Code § 16.1–282 also mandates that, "[a]fter the hearing required pursuant to subsection C, the court *shall* schedule a permanency planning hearing on the case to be held five months thereafter in accordance with § 16.1–282.1 or within thirty days upon the petition of any party entitled to notice in proceedings under this section." (Emphasis added.)

In my view, by using the word "shall," the legislature intended for any department of social services to follow specific statutory provisions once a child has been taken into custody because of abuse or neglect. In fact, we have held that "the statute places on the Department the obligation to prepare a foster care plan" and that "[n]othing in the statutory scheme ... removes the burden on [the Department] to establish compliance with the statutes." *Strong*, 45 Va.App. at 321–22, 610 S.E.2d at 875. In other words, although the trial court may grant temporary custody to a relative or other interested party, the statute contemplates that a foster care review hearing, pursuant to Code § 16.1–282, and ultimately a permanency planning hearing, pursuant to Code § 16.1–282.1, will take place. Accordingly, because the statutory scheme requires DSS to comply with certain provisions, I would hold that the trial court erred in terminating DSS's involvement in the case.

For these reasons, I would reverse the judgment of the circuit court and remand for further proceedings consistent with this analysis.