COURT OF APPEALS OF VIRGINIA


Present:   Judges Humphreys, Petty and McCullough
Argued at Lexington, Virginia


GILBERT HARRISON BERGER, AS GUARDIAN *AD LITEM*
  FOR M.N.H., L.S.H., A.C.H., K.G.H. and Z.D.H.
                                                    MEMORANDUM OPINION[*] BY
v.      Record No. 1588-11-2                        JUDGE WILLIAM G. PETTY
                                                         MAY 22, 2012
NATHANIEL HARRIS, JENNIFER LEIGH ROSE AND
  ORANGE COUNTY DEPARTMENT OF SOCIAL SERVICES[1]


FROM THE CIRCUIT COURT OF ORANGE COUNTY
Daniel R. Bouton, Judge

        (Gilbert Harrison Berger; Berger Law Office, on brief), for appellant.
        Appellant submitting on brief.[2]

        (Robert F. Beard; Catherine Lea; Christian A. Brashear; The Lea
        Law Firm, on brief), for appellees.  Appellees submitting on brief.


        Gilbert Harrison Berger, as guardian *ad litem* for the minor children M.N.H., L.S.H., A.C.H,

K.G.H, and Z.D.H., brings this appeal from a case concerning the termination of parental rights of

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] The style of this case in the proceedings below was "Orange County Department of
Social Services v. Nathaniel Harris and Jennifer Leigh Rose."  The guardian *ad litem* (GAL)
modified the style to reflect the new alignment of the parties when he filed his notice of appeal.
We conclude that this change was appropriate, and thus we deny the GAL's motion to restyle the
case in its original form.

[2] For reasons not apparent from the pleadings, the GAL elected to waive oral argument,
even though he initiated this appeal and is the only one seeking to continue to litigate this matter.
His decision to waive oral argument is perplexing, especially in light of the Standards of the
Supreme Court governing his duties.  See Supreme Court of Virginia, Standards To Govern the
Performance of Guardians Ad Litem to Children (2003),
http://www.courts.state.va.us/courtadmin/aoc/cip/programs/gal/children/gal_performance_standa
rds_children.pdf ("In fulfilling the duties of a Guardian *ad litem* (GAL), an attorney shall:  . . .
(F) Appear in Court on the dates and times scheduled for hearings prepared to fully and
vigorously represent the child's interests" and "(J) [ensure] the child is represented by a GAL in
any appeal involving the case.").

Nathaniel Harris and Jennifer Leigh Rose, the children's parents. The Orange County Department of Social Services ("DSS") filed a petition to terminate the parents' residual parental rights after the children were removed from their home, placed into foster care, and adjudged as abused and neglected. In the course of the proceeding, however, the parents entered into permanent entrustment agreements with the DSS agreeing to place the children in the care of the DSS and the foster care system with the eventual goal of having the children adopted. Accordingly, the DSS asked the JDR court to nonsuit the proceeding, and the JDR court did so.

Thereafter, Berger timely filed an appeal to the circuit court, requesting review of the JDR court's decision to grant the nonsuit. In response, the DSS filed a motion to dismiss the appeal, arguing (1) that the nonsuit was proper and (2) that the appeal was moot due to the entrustment agreements. The circuit court granted the motion to dismiss and agreed with the DSS, ruling that the JDR court "properly granted the motions for nonsuit" and that "the execution of the entrustment agreement[s] caused the foster care petitions to be moot in any event."

Berger appealed the decision to this Court. On appeal, he raises two assignments of error. First, he argues that the circuit court "erred by affirming the ruling of the [JDR court] which awarded a nonsuit to the [DSS]" because "foster care cases [where a finding of abuse and neglect has occurred] are not the type of cases that are subject" to the nonsuit statute. Second, he argues that the circuit court erred by ruling that the entrustment agreements rendered the appeal moot. For the following reasons, we affirm the judgment of the circuit court.

I.

Because the parties are fully conversant with the record in this case and this memorandum opinion carries no precedential value, we recite below only those facts and incidents of the proceedings as are necessary to the parties' understanding of the disposition of this appeal. "'We view the evidence and all reasonable inferences fairly deducible from it in the

light most favorable to the prevailing party at trial.'" Bennett v. Sage Payment Solutions, 282

Va. 49, 54, 710 S.E.2d 736, 739 (2011) (quoting Syed v. ZH Techs., Inc., 280 Va. 58, 68, 694

S.E.2d 625, 631 (2010)).

## II.

### A. JDR Court Order Granting Nonsuit

We first address Berger's argument that the circuit court "erred by affirming the ruling of

the [JDR court] which awarded a nonsuit to the [DSS]." Berger misunderstands the fundamental

nature of the "appeal" to the circuit court in this case, which is in fact a *de novo* trial, not a matter of

appellate review. As we explain in further detail below, we hold that the circuit court lacked subject

matter jurisdiction to "affirm" the JDR court's award of a nonsuit. Thus, we find no reversible

error.

An appeal from a proceeding at a JDR court concerning the termination of parental rights

"may be taken to the circuit court within 10 days from the entry of a final judgment, order or

conviction and shall be heard de novo." Code § 16.1-296(A). This same kind of *de novo* appeal

may also arise from civil and criminal cases heard in the general district court. See Code

§ 16.1-106 (granting a right of appeal in a civil case decided in the general district court with an

amount in controversy exceeding $50 and defining the appeal as subject to *de novo* review);

Code § 16.1-132 (granting a right of appeal in misdemeanor cases heard in a general district

court); Code § 16.1-136 (stating that the appeal from a misdemeanor case in general district court

is subject to *de novo* review).

What we have said regarding a *de novo* appeal to the circuit court in a criminal case

originating in general district court is particularly instructive in the case at bar. We have

previously held that the circuit court is without subject matter jurisdiction to affirm or reverse a

decision by the general district court to allow the Commonwealth to *nolle prosequi* one or more

criminal charges.  Wright v. Commonwealth, 52 Va. App. 690, 703-07, 667 S.E.2d 787, 793-95 (2008).  The reason for this holding is simple:  because "the circuit court has jurisdiction to conduct [only] *de novo* reviews of misdemeanor convictions," a *de novo* appeal to the circuit court "vacate[s] the decision of the lower court as if it had never occurred and provide[s] a new trial in the circuit court."  Id. at 706 n.9, 667 S.E.2d at 795 n.9.  Thus, rather than provide a circuit court with the power of appellate review over decisions by a court not of record, appeals subject to *de novo* review by the circuit court "are actually re-trials."  Id.; see also Thomas Gemmell, Inc. v. SVEA Fire and Life Ins. Co., 166 Va. 95, 98, 184 S.E. 457, 458 (1936) ("A court which hears a case *de novo*, which disregards the judgment of the court below, which hears evidence anew and new evidence, and which makes final disposition of a case, acts not as a court of appeals but as one exercising original jurisdiction.").

Accordingly, when Berger appealed to the circuit court from the JDR court, the circuit court did not have any authority to review the decision of the JDR court—the circuit court did not have appellate jurisdiction over the case.  Instead, the circuit court was simply empowered to hold a new trial.  As we explained in Wright, a *de novo* appeal to the circuit court vacates the proceedings of the inferior court from which it was taken.  Accordingly, when Berger appeared in the circuit court and asked it to "reverse" the order of the JDR court, the order he wanted reversed had already been vacated by the *de novo* appeal.  The circuit court's only authority at that point was to conduct a new trial.[3]  Thus, the trial court committed no reversible error when it declined to give Berger the relief he requested.

---

[3] This procedural posture demonstrates a lingering problem with the manner in which this appeal was requested.  Since the DSS initiated the JDR court proceeding and later requested a nonsuit of that proceeding, it is unclear how a *de novo* trial could have proceeded before the circuit court when the DSS obviously no longer wished to proceed with the case.

B.  Mootness Based on the Entrustment Agreements

We next address Berger's argument that the circuit court erred by ruling that the permanent entrustment agreements rendered the *de novo* appeal moot.  Berger essentially views the entrustment agreements as illegitimate under the facts of this case.  Berger submits that once (1) the DSS took the children from the parents, (2) a court adjudged the children abused and neglected by the parents, and (3) the DSS placed the children in foster care and considered a permanency plan for the children, the proceedings reached "a point of no return for all parties including the court," and "the case [was required to] follow its due course along the foster care statutory scheme."  Thus, according to Berger, the DSS may not "dismiss[] its plan and withdraw[] its case because the parents have voluntarily 'placed' their children with the department."  We disagree.

Berger rests his argument that the law required the court and the parties to "finish" the case primarily on Lynchburg Div. of Soc. Servs. v. Cook, 276 Va. 465, 666 S.E.2d 361 (2008), noting that the Court held in that case that "[t]he statutes governing foster care proceedings are detailed and require specific findings by the court at each stage of the process."  276 Va. at 478, 666 S.E.2d at 367.  He particularly emphasizes Cook's use of the word "must" in detailing several code sections describing the court process for involuntarily transferring the custody of an abused and neglected child from a parent to a relative.  Id. at 478-79, 666 S.E.2d at 367.

Berger misreads Cook.  Cook held that the custody statutes "'require[] that when the custody of an abused and neglected child *is at issue*, the trial court must make specific written findings of fact, designed to protect the child from the dangers for which he or she was removed from the home.'"  Id. at 481-82, 666 S.E.2d at 369 (emphasis added) (quoting Lynchburg Div. of Soc. Servs. v. Cook, 50 Va. App. 218, 235-36, 648 S.E.2d 328, 336 (2007) (Humphreys, J., dissenting)).  In so doing, Cook merely identified the process the circuit court was required to follow in a case where child custody *is in dispute*.  See id. at 470-84, 666 S.E.2d 363-70.  By

executing the permanent entrustment agreements in this case, the parents acquiesced to the permanent placement of their children in the foster care system with an ultimate goal of adoption.[4] In other words, the execution of the entrustment agreements rendered the question of the custody of the abused and neglected children no longer at issue, making <u>Cook</u> inapplicable and the petition before the circuit court moot. Thus, the circuit court did not err.

III.

For the foregoing reasons, we conclude that the circuit court was without jurisdiction to consider whether the JDR court improperly granted the DSS a nonsuit. We also conclude that the circuit court correctly held that the entrustment agreements rendered the *de novo* appeal before it moot. Therefore, we affirm the judgment of the circuit court.

<u>Affirmed.</u>

---

[4] Berger suggests that because the children were involuntarily removed from the parents' household by the DSS before the execution of the permanent entrustment agreements, the parents did not voluntarily enter into the agreements, and thus the agreements are invalid. Berger has cited no authority for this proposition. Moreover, whether the entrustment agreements were entered into involuntarily, i.e., as a result of fraud and duress, is not properly before us; indeed, it is something for the parents to assert, not the children's guardian *ad litem*. <u>Cf.</u> <u>Norfolk Div. of Soc. Servs. v. Unknown Father</u>, 2 Va. App. 420, 432-33, 345 S.E.2d 533, 540 (1986) (holding that a child's parents may agree to place the child up for adoption and that the parents may invalidate the agreement by proof of fraud and duress).