**Salem**

SHERRY R. RADER and KENNETH E. RADER, JR.

v.

MONTGOMERY COUNTY DEPARTMENT OF SOCIAL SERVICES

Nos. 1243-86 and 1292-86

Decided February 16, 1988

COUNSEL

John S. Huntington, for Sherry R. Rader.
E. Curtis Schwab, Jr., for Kenneth E. Rader, Jr.

Robert C. Viar, Jr., for Montgomery County Department of Social Services

OPINION

**KOONTZ, C.J.** — By order entered on September 30, 1986, in the Circuit Court of Montgomery County, the residual parental rights of Sherry R. Rader and Kenneth E. Rader to their two infant children were terminated and the Montgomery County Department of Social Services was given authority to place these children for adoption. On appeal, both parents raise the following issues: (1) whether the circuit court had jurisdiction to terminate their parental rights and (2) whether the evidence was sufficient to support a finding that their parental rights should be terminated. For purposes of this appeal, these cases were consolidated by order entered on December 15, 1986. Because we find that the first issue is dispositive and requires a reversal of the decision below, we will not address the sufficiency of the evidence issue.

## I. Procedural Background

On July 5, 1984, pursuant to petitions filed by the Montgomery Department of Social Services (hereinafter referred to as "DSS") for custody of three children of Mrs. Rader by a prior marriage, the Juvenile and Domestic Relations District Court for Montgomery County, after hearing evidence, granted custody of these children to DSS. Mrs. Rader was present at that hearing. Mr. Rader was not. In addition to granting these petitions, the juvenile court, *sua sponte*, placed the custody of the two children of Mr. and Mrs. Rader with DSS. Mrs. Rader had legal custody of these two children but Mr. Rader had actual physical custody at the time of the court's order. Upon being notified of the court's award of custody, Mr. Rader brought these two children to the DSS. Neither parent appealed this order.

Subsequently on August 2, 1985, DSS filed a petition seeking to terminate the parental rights of Mr. and Mrs. Rader pursuant to the provisions of Code § 16.1-283. Court-appointed counsel was provided for Mr. and Mrs. Rader and a *guardian ad litem* represented the children. This petition was granted after a hearing on the merits by the juvenile court on October 3, 1985. Upon appeal to the Circuit Court of Montgomery County, a *de novo* hearing was held on June 30, 1986. The final order terminating parental rights was entered on September 30, 1986. This appeal followed.

## II. Factual Background

We cite the essential factual background of this case to clarify the context in which this case arose. The record is presented to us in the form of an agreed written Statement of Facts.

Mrs. Rader has three children by a prior marriage and two children by her marriage to Mr. Rader. Beginning in 1983 and over the next several years, the record reflects what can be fairly described as numerous incidents of neglect of these children, marital turmoil and separation, emotional instability of Mrs. Rader, lack of adequate and regular support, and Mr. Rader's history of incarceration for criminal acts. In 1983, Mrs. Rader sought help from DSS. She voluntarily placed her three older children in foster care and placed the two Rader children with Mr. Rader. Mrs. Rader was referred to emergency mental health services. At that

time the Raders, while not divorced, maintained separate homes.

Apparently the three older children were subsequently returned to Mrs. Rader, and as a result of her neglect of them, DSS filed petitions seeking the custody of these children. That custody was granted to DSS on July 5, 1984, and is not in dispute in this appeal. This appeal centers on the granting of custody of the two Rader children to DSS, *sua sponte*, with no petitions having been filed seeking the custody of those children and in the absence of Mr. Rader. That action by the juvenile court led to the ultimate termination of both parents' parental rights by the circuit court on September 30, 1986.

### III. Discussion

The statutory scheme for the constitutionally valid termination of residual parental rights in this Commonwealth is primarily embodied in Code § 16.1-283. That scheme provides detailed procedures designed to protect the rights of the parents and their child. These procedures must be strictly followed before the courts are permitted to sever the natural and legal bond between parent and child. Except in the case of abandonment and where the identity of the parents cannot be determined, that scheme provides that after the filing of a foster care plan which documents termination of residual parental rights as being in the best interests of the child, and after proper notice to the parents and an opportunity to be heard, the courts may terminate residual parental rights based on specified statutory factors, such as abuse, neglect or failure to provide for essential needs of the child.

In this case, the Raders maintain that, because no petition for custody was filed, the juvenile court lacked jurisdiction to grant custody of their children to DSS on July 5, 1984. Consequently, they further maintain that the subsequent orders terminating their residual parental rights by the juvenile court on October 3, 1985 and by the circuit court on September 30, 1986, were void for lack of jurisdiction.

DSS maintains that the failure to file a petition was not fatal to the subsequent proceedings because the Raders had actual notice of the juvenile court decision on the day it was rendered and, consequently, could have petitioned for a rehearing or appealed to the circuit court. In addition, DSS maintains that the Raders subse-

quently participated in the development of the foster care plan for their children and that valid petitions seeking termination of their residual parental rights were filed; thus, DSS argues that they "had ample opportunity to protect their interests, essentially agreed to the proceedings by their subsequent actions, and in fact can claim no prejudice of their rights."

■ We disagree with DSS. We find nothing in the statutory scheme which removes the burden on DSS to establish compliance with the statutes, which places the burden on the parents to protect their interests, or which operates as a waiver of their rights. To the contrary, we believe due process prohibits the procedure followed in this case.

On July 5, 1984, when the juvenile court apparently first became aware of the circumstances of the two Rader children in question, no petition seeking their custody by DSS had been filed. Code § 16.1-260, in pertinent part, requires the filing of a petition to invoke the jurisdiction of the juvenile court. Contrary to the position taken by DSS in this appeal, paragraph (F) of Code § 16.1-260[1] does not waive the requirement of the filing of a petition but, rather, addresses the duties of the intake officer and the actions taken in regard to the petition. The juvenile court did not exercise its jurisdiction for emergency removal of the children pursuant to Code §§ 16.1-251 to 253. Under these statutes, the parents would have been given specific notice in writing of a subsequent hearing on the merits by a petition stating the factual circumstances which allegedly necessitated removal of the children. In summary, the juvenile court did not have jurisdiction to enter the original custody order on July 5, 1984; consequently, the order was void.

■ The issue then becomes whether the filing of petitions seeking termination of residual parental rights in the juvenile court and subsequently on appeal in the circuit court resolved this jurisdictional defect.

Code § 16.1-283 (B) and (C) in pertinent part provide:

---

[1] Code § 16.1-260(F) states: "Failure to comply with the procedures set forth in this section shall not divest the juvenile court of the jurisdiction granted to it in § 16.1-241" (the general jurisdiction section for the juvenile court).

> The residual parental rights of a parent or parents of a child found by the court to be neglected or abused and placed in foster care as a result of (i) court commitment, (ii) an entrustment agreement entered into by the parent or parents or (iii) other voluntary relinquishment by the parent or parents may be terminated . . . .(emphasis added).

No entrustment agreement was entered into nor was there a voluntary relinquishment of custody by the Raders to DSS. Therefore, in this case the sole jurisdictional authority of the juvenile and the circuit court rests on the correct interpretation of "court commitment" in this statute. We hold that this language implicitly contemplates a *valid* court commitment. Without a custody petition, the juvenile court did not have jurisdiction originally to place these children in foster care and, accordingly, that placement was not a valid commitment. Without a valid court commitment, the provisions of Code § 16.1-283 did not grant jurisdiction to either the juvenile or the circuit court to terminate residual parental rights. Accordingly, the juvenile court order of October 3, 1985 was void as was the circuit court order of September 30, 1986.

In rendering this decision we are not unmindful of the time which has elapsed in the lives of these children during which they have been subjected to considerable turmoil. We likewise acknowledge the conscientious efforts of DSS to bring stability to their lives. We believe, however, as we indicated in *Martin v. Department of Social Services*, 3 Va. App. 15, 348 S.E.2d 13 (1986), that due process requires the trial courts to comply strictly with the statutory scheme for disposition of child custody cases.

Accordingly, we reverse the decision below and remand this case for further proceedings consistent with this opinion.

*Reversed and remanded.*

Barrow, J., and Cole, J., concurred.