COURT OF APPEALS OF VIRGINIA


Present: Judges Kelsey, Petty and Senior Judge Bumgardner


KELLY WILLKIE OXLEY

                                                    MEMORANDUM OPINION*
v.      Record No. 0654-06-4                           PER CURIAM
                                                    SEPTEMBER 19, 2006
FAIRFAX COUNTY DEPARTMENT OF
 FAMILY SERVICES


                    FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                              Marcus D. Williams, Judge

            (Michael S. Arif; Martin & Arif, on brief), for appellant.

            (David P. Bobzien, County Attorney; Peter D. Andreoli, Jr., Deputy
            County Attorney; Dennis R. Bates, Senior Assistant County
            Attorney, May S. Kheder, Assistant County Attorney, on brief), for
            appellee.

            (Matthew W. Greene; Smith & Greene, P.L.L.C., on brief),
            Guardian *ad litem* for the minor child.


        Kelly Willkie Oxley (Oxley) appeals from the trial court's decision terminating her residual

parental rights to G.T. pursuant to Code § 16.1-283(B)(2)(b) and (C)(2).  Oxley argues the evidence

failed to prove her use of illegal drugs caused harm to G.T. and the evidence failed to prove

termination of her residual parental rights was in G.T.'s best interests.  Upon review of the record

and briefs, we conclude this appeal is without merit.  Accordingly, we summarily affirm the

decision of the trial court.  See Rule 5A:27.

                                    BACKGROUND

        We view the evidence in the light most favorable to the prevailing party below and grant

to it all reasonable inferences fairly deducible therefrom.  See Logan v. Fairfax County Dep't of

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 462 (1991). So viewed, the evidence proved that in January 2001 the Fairfax County Department of Family Services (DFS) began providing protective supervision to Oxley after she physically abused G.T., who was six years old. DFS provided home-based services for Oxley, and Oxley participated in the Women's Recovery Center for her illegal drug abuse. On February 19, 2002, an emergency order transferred legal custody of G.T. to DFS because Oxley had relapsed into drug use and left G.T. unsupervised for extended periods of time. Oxley attended a court-ordered drug treatment program for a period of time, but was discharged from the program in the spring of 2003 due to illegal drug use. In July 2003, Oxley entered New Beginnings, another drug treatment program, but was discharged in August 2003 due to illegal drug use. In December 2003, G.T. was returned to the home under the care of Richard Oxley, her stepfather, but Oxley was ordered to remain out of the marital home until she completed the Living Free drug treatment program. Oxley completed the program and returned to the home in June 2004. In August 2004, Richard Oxley left the marital home. In September 2004, Oxley tested positive for cocaine. DFS again removed G.T. from Oxley's care. From September until December 2004, Oxley failed to contact DFS to arrange for visitation with G.T. In March 2005, DFS changed the goal to adoption for G.T. In March 2005, at her own expense, Oxley entered a long-term in-patient drug treatment program in another state. After completing the program on July 20, 2005, Oxley moved in with her father, Robert Willkie.

From July 25 through 27, 2005, the court held a hearing on DFS's request to terminate Oxley's parental rights. The court heard extensive testimony from social workers, Oxley's substance abuse counselors from the programs she attended in Virginia, a clinical psychologist, Willkie, and Oxley. Oxley testified she no longer craved drugs and felt "wonderful." At the conclusion of the hearing, the court found that Oxley had been addicted to drugs and had abused

and neglected G.T. Since Oxley had just completed the long-term in-patient treatment program, the court withheld a determination whether it was in G.T.'s best interests to terminate Oxley's parental rights. The court withheld the determination for six months to provide Oxley with an opportunity to prove that she could abstain from illegal drug use for a reasonable period of time. The court ordered Oxley to submit to weekly drug screens, to abstain from illegal drug use, to seek and maintain employment, and to maintain contact with G.T.

On January 18, 2006, DFS requested that Oxley's parental rights be terminated because she tested positive for cocaine on three occasions between August and December 2005, she submitted an adulterated urine sample in September 2005, she failed to present herself for weekly drug screens, she refused to provide proof of employment, and she failed to maintain consistent visitation with G.T. On March 2, 2006, Oxley did not contest the assertion that she had relapsed and the trial court determined it was in G.T.'s best interests to terminate Oxley's parental rights.

## ANALYSIS

"Code § 16.1-283 embodies 'the statutory scheme for the . . . termination of residual parental rights in this Commonwealth' [which] . . . 'provides detailed procedures designed to protect the rights of the parents and their child,' balancing their interests while seeking to preserve the family." Lecky v. Reed, 20 Va. App. 306, 311, 456 S.E.2d 538, 540 (1995) (quoting Rader v. Montgomery County Dep't of Social Servs., 5 Va. App. 523, 526, 365 S.E.2d 234, 235 (1988)). "'In matters of a child's welfare, trial courts are vested with broad discretion in making the decisions necessary to guard and to foster a child's best interests.'" Logan, 13 Va. App. at 128, 409 S.E.2d at 463 (quoting Farley v. Farley, 9 Va. App. 326, 328, 387 S.E.2d 794, 795 (1990)). The trial judge's findings, "'when based on evidence heard *ore tenus*, will not

be disturbed on appeal unless plainly wrong or without evidence to support it.'" Id. (quoting Peple v. Peple, 5 Va. App. 414, 422, 364 S.E.2d 232, 237 (1988)).

Code § 16.1-283(B)(1) and (2) requires proof, by clear and convincing evidence, that "[t]he neglect or abuse suffered by the child presented a serious and substantial threat to his life, health or development" and "[i]t is not reasonably likely that the conditions which resulted in such neglect or abuse can be substantially corrected or eliminated so as to allow the child's safe return to his parent or parents within a reasonable period of time." Code § 16.1-283(B)(2) further provides:

> Proof of any of the following shall constitute prima facie evidence of the conditions set forth in subdivision B 2 hereof:
>
> *  *  *  *  *  *  *
>
> b. The parent or parents have habitually abused or are addicted to . . . narcotics or other dangerous drugs to the extent that proper parental ability has been seriously impaired and the parent, without good cause, has not responded to or followed through with recommended and available treatment which could have improved the capacity for adequate parental functioning.

Pursuant to Code § 16.1-283(C), residual parental rights may be terminated if (1) the parents, without good cause, have been unwilling or unable, within a reasonable period not to exceed twelve months, to remedy substantially the conditions which led to the child's foster care placement, notwithstanding reasonable and rehabilitative agencies to such end, and (2) it is in the best interests of the child.

"[T]he statutory definitions of an abused or neglected child do not require proof of actual harm or impairment having been experienced by the child. The term 'substantial risk' speaks *in futuro*." Jenkins v. Winchester Dep't of Soc. Servs., 12 Va. App. 1178, 1183, 409 S.E.2d 16, 19 (1991).

Oxley argues there was no evidence her illegal drug use resulted in any harm to G.T. On the contrary, clear and convincing evidence proved that Oxley's drug use presented a substantial threat to G.T. In January 2001, after Oxley physically abused G.T., DFS provided services to Oxley, including drug treatment services. In February 2002, an emergency order transferred legal custody of G.T. to DFS because Oxley had relapsed into drug use and left G.T. unsupervised for extended periods of time. Oxley participated in numerous drug treatment programs, but continued to relapse, and, in September 2004, DFS removed G.T. from Oxley's care due to illegal drug use. After the July 2005 termination hearing, Oxley relapsed and failed to maintain consistent visitation with G.T. At the conclusion of the termination hearing, the trial court stated that "it's clear from the prior orders that there have been findings of abuse and neglect" that required G.T. to be placed in a foster home. There was sufficient evidence supporting the trial court's finding that G.T. suffered neglect or abuse by Oxley's continued illegal drug abuse.

Oxley argues it was not in G.T.'s best interests to terminate her parental rights because G.T. maintains a strong attachment to her.

DFS began providing drug treatment services to Oxley in January 2001. Oxley was treated at numerous drug treatment programs, including a long-term in-patient program in another state. At the termination hearing in July 2005, Oxley testified she no longer craved drugs and felt "wonderful." The trial court withheld the determination whether it was in G.T.'s best interests to terminate Oxley's parental rights for six months to provide Oxley with an opportunity to prove that she could abstain from illegal drug use for a reasonable period of time. Oxley agreed to weekly drug screens, to abstain from illegal drug use, to seek and maintain employment, and to maintain contact with G.T. The following month Oxley failed a drug screen. Within five months of the termination hearing Oxley failed drug screens, failed to

- 5 -

present herself for weekly drug screens, refused to provide proof of employment, and failed to maintain consistent visitation with G.T. At the hearing in March 2006, Oxley did not contest the contention that she had relapsed into illegal drug use. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his responsibilities." Kaywood v. Halifax County Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990). There was sufficient evidence supporting the trial court's finding that it was in G.T.'s best interests to terminate Oxley's parental rights.

The record supports the trial court's finding that DFS presented clear and convincing evidence satisfying the statutory requirements of Code § 16.1-283(B)(2)(b) and (C)(2) and in establishing that the termination of appellant's residual parental rights was in G.T.'s best interests.

Accordingly, we summarily affirm the decision of the trial court. See Rule 5A:27.

Affirmed.