COURT OF APPEALS OF VIRGINIA

Present: Judges Alston, Decker and Senior Judge Coleman

AMIRAH ALFARQUI

v.      Record No. 0469-14-1

NEWPORT NEWS DEPARTMENT
 OF HUMAN SERVICES

AMIRAH ALFARQUI

v.      Record No. 0470-14-1

NEWPORT NEWS DEPARTMENT                  MEMORANDUM OPINION*
 OF HUMAN SERVICES                              PER CURIAM
                                           SEPTEMBER 23, 2014

AMIRAH ALFARQUI

v.      Record No. 0471-14-1

NEWPORT NEWS DEPARTMENT
 OF HUMAN SERVICES

AMIRAH ALFARQUI

v.      Record No. 0473-14-1

NEWPORT NEWS DEPARTMENT
 OF HUMAN SERVICES


          FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
                         C. Peter Tench, Judge

          (Oldric J. LaBell, Jr., on briefs), for appellant.

          (Patrick C. Murphrey, Assistant City Attorney; Dywona L.
          Vantree-Keller, Guardian *ad litem* for the minor children; City
          Attorney's Office, on brief), for appellee.

          _____

          * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Amirah Alfarqui, mother, appeals the trial court's orders terminating her parental rights to four of her children. On appeal, she contends the trial court "lacked jurisdiction or procedural and statutory authority to terminate [her] parental rights . . . with regard to each child in issue because the Juvenile [and Domestic Relations District] Court no longer had jurisdiction of the matters at the time it ordered termination of her parental rights." Mother also lists numerous assignments of error asserting the evidence was insufficient to support the trial court's termination of her parental rights to the children pursuant to Code § 16.1-283(C)(2). In addition, mother argues the trial court erred in: approving permanency planning orders for the children with the goal of adoption; approving foster care service plans with the goal of adoption for each child; "failing to evaluate the evidence relating to each child in issue separately and individually and mak[ing] individual findings for the child in issue;" "interpreting and applying the public policy of [Code] § 16.1-283(C)(2) by making the one-year period the controlling factor;" and "failing to apply a clear and convincing standard in determining the issues relevant to (a) approval of the adoptions goal and (b) the termination of parental rights." Upon reviewing the record and briefs of the parties, we conclude that these appeals are without merit. Accordingly, we summarily affirm the decisions of the trial court. See Rule 5A:27.

Jurisdiction

Appellant contends Code § 16.1-283 provides that the juvenile and domestic relations district court (JDR court) "must have approved a Foster Care Plan with the goal of adoption before it can entertain or rule upon a petition to terminate residual parental rights." However, Code § 16.1-283 states: "No petition seeking termination of residual parental rights shall be accepted by the court prior to *the filing* of a foster care plan, pursuant to Code § 16.1-281, which documents termination of residual parental rights as being in the best interest of the child." (Emphasis added.) Therefore, contrary to mother's assertion, the statute does not require the approval of a foster care

plan with the goal of adoption before a court can consider a petition to terminate residual parental rights. Rather, the statute requires the filing of the requisite foster care plan before a court can consider a petition to terminate residual parental rights. Here, the record shows that the Department of Human Services (DHS) filed the foster care plans in the JDR court on April 30, 2013 and the petitions to terminate mother's parental rights on May 13, 2013. Therefore, these filings complied with the terms of Code § 16.1-283. See also Rader v. Montgomery Cnty. Dep't of Soc. Servs., 5 Va. App. 523, 526, 365 S.E.2d 234, 236 (1988) (the statutory procedures of Code § 16.1-283 must be strictly followed before courts are permitted to terminate parental rights).

Mother also asserts that because she appealed the JDR court's approval of the permanency planning orders to the trial court prior to the JDR court's consideration of the termination petitions, the JDR court lost jurisdiction to consider the petitions to terminate her parental rights.

DHS filed the permanency planning petitions pursuant to Code § 16.1-282.1. The JDR court entered the permanency planning orders on May 28, 2013. Mother appealed those orders on June 7, 2013. DHS filed the petitions for the termination of mother's parental rights on May 13, 2013, and pursuant to Code § 16.1-283 those petitions involved separate proceedings from the permanency planning hearings.

> Before the residual parental rights of an individual may be terminated, a separate proceeding must be conducted upon the filing of a petition specifically requesting such relief. Code § 16.1-283. We construe the term "separate proceeding" as used in Code § 16.1-283 to mean a hearing separate and distinct from an abuse and neglect adjudication, entrustment disposition, or foster care placement and review. This does not mean, however, that a totally separate case must be initiated in the juvenile court. Rather, the statute requires that initially, a petition must be filed specifically requesting termination of parental rights so that proper notice is given. Because of the potentially drastic consequences of a termination proceeding, a separate hearing must be conducted to ensure that the termination issue is not confused with other issues which may have been before the court previously. This interpretation of the term "separate proceeding" is consistent with the juvenile court statutory framework. We find that the

legislature intended that this framework, rather than general rules of civil procedure, govern the manner in which cases are filed and proceed within the juvenile courts.

Stanley v. Fairfax Cnty. Dep't of Soc. Servs., 10 Va. App. 596, 601-02, 395 S.E.2d 199, 202 (1990), aff'd, 242 Va. 60, 405 S.E.2d 621 (1991).

The JDR court held a separate hearing on August 20, 2013 related to the petitions for termination, and the JDR court entered orders terminating mother's parental rights to the children on that date. On August 23, 2013, mother filed notices of appeal for the JDR court orders terminating her parental rights. The prior appeals of the permanency planning orders did not affect the jurisdiction of the JDR court to consider the termination petitions. Rather, as stated above, the statutory framework of Code § 16.1-283 was followed.

Mother also contends that because she appealed the permanency planning orders, this "had the effect of voiding" those orders so that the JDR court did not have an approved foster care plan with the goal of adoption in effect when it acted on the termination petitions.

Code § 16.1-242.1 provides:

> Upon appeal to the circuit court of any case involving a child placed in foster care and in any appeal to the Court of Appeals or Supreme Court of Virginia, the juvenile court shall retain jurisdiction to continue to hear petitions filed pursuant to §§ 16.1-282 and 16.1-282.1. Orders of the juvenile court in such cases shall continue to be reviewed and enforced by the juvenile court until the circuit court, Court of Appeals or Supreme Court rules otherwise.

Thus, pursuant to the second sentence of this statute, the permanency planning orders issued by the JDR court pursuant to Code § 16.1-282.1 "continue[d] to be reviewed and enforced" by the JDR court until the trial court or appellate court ruled on the appeal of the orders. Nothing in the statute indicates that the filing of a notice of appeal to the trial court for a permanency planning order renders that order void.

- 4 -

<u>Sufficiency of the Evidence</u>

On appeal, we view the evidence in the light most favorable to the party prevailing below and grant to it all reasonable inferences fairly deducible therefrom. <u>Logan v. Fairfax Cnty. Dep't of Human Dev.</u>, 13 Va. App. 123, 128, 409 S.E.2d 460, 462 (1991). "'In matters of child welfare, trial courts are vested with broad discretion in making the decisions necessary to guard and to foster a child's best interests.'" <u>Id.</u> at 128, 409 S.E.2d at 463 (quoting <u>Farley v. Farley</u>, 9 Va. App. 326, 328, 387 S.E.2d 794, 795 (1990)). The trial court's judgment, "when based on evidence heard *ore tenus*, will not be disturbed on appeal unless plainly wrong or without evidence to support it." <u>Peple v. Peple</u>, 5 Va. App. 414, 422, 364 S.E.2d 232, 237 (1988).

A court may terminate parental rights if it finds, based upon clear and convincing evidence, it is in the best interests of the child and that:

> The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

Code § 16.1-283(C)(2).

> [S]ubsection C termination decisions hinge not so much on the magnitude of the problem that created the original danger to the child, but on the demonstrated failure of the parent to make reasonable changes. Considerably more "retrospective in nature," subsection C requires the court to determine whether the parent has been unwilling or unable to remedy the problems during the period in which he has been offered rehabilitation services.

<u>Toms v. Hanover Dep't of Soc. Servs.</u>, 46 Va. App. 257, 271, 616 S.E.2d 765, 772 (2005) (quoting <u>City of Newport News Dep't of Soc. Servs. v. Winslow</u>, 40 Va. App. 556, 562-63, 580 S.E.2d 463, 466 (2003)).

On March 3 and 4, 2011, the DHS took custody of four of mother's children: R.D., Jr., T.D., Am.J. and A'L.J., after she told DHS that she was "overwhelmed" with the children. At that time, mother was receiving services through DHS's Family Stabilization Unit. In addition, in 2008 and 2010, mother had instances resulting in Level 2 Dispositions for Lack of Supervision of the children.

Dr. Jennifer Gildea, a licensed clinical psychologist, performed psychological and parenting capacity assessments on mother in May and June 2011. Dr. Gildea also conducted re-evaluations in 2012. In 2011, Dr. Gildea recommended that mother participate in individual therapy and structural family therapy, demonstrate increased independence in managing daily responsibilities, participate in parental coaching sessions, and commit to safety planning goals, including an agreement to not leave the children in the care of inappropriate individuals. In addition, Dr. Gildea recommended mother obtain gainful employment, maintain stable housing, and not have unsupervised visits with the children. After the 2012 reassessments of mother, Dr. Gildea opined that mother had made positive progress, however, she was still not ready for a trial home placement of the children.

DHS provided mother with clothing vouchers, bus passes, use of computers to search for employment, a prepaid cell phone, bedding, and food vouchers. She also received structural family therapy beginning in May 2011. However, mother only sporadically attended the therapy from 2011 until 2013. DHS provided mother with parental coaching services beginning in September 2011. These services were terminated in 2013 due to mother's lack of participation. DHS provided mother with opportunities for supervised and unsupervised visitation with the children. On one occasion during an unsupervised visit, mother had been with the children for only about forty-five minutes when she contacted the DHS and asked that a worker retrieve the children early because she had a headache and the children were not following directions. During two other unsupervised visits mother violated the safety plan regarding her supervision of the children.

Mother was unable to sustain stable housing despite DHS's numerous housing referrals. She was unemployed at the time of the trial. She failed to complete services recommended by the parental capacity assessment, including structural family therapy. Mother cancelled meetings related to resuming unsupervised visitation with the children. On February 1, 2013, she was advised that she needed to schedule an appointment for structural family therapy, schedule an assessment for individual therapy, and provide her case worker with evidence that she had applied for employment with three places. Mother only scheduled the appointment for structural family therapy.

Later in February 2013, DHS drafted a letter asking mother to fully re-engage in structural family therapy and individual therapy and to provide evidence that she was seeking employment. When mother was handed the letter she left the room and stated she was "done." Mother failed to return messages left on her phone and she disengaged all services, including visitation with the children until February 25, 2013.

At the time of the trial, the children had been in foster care for two years and nine months. DHS presented evidence that they exhibit a strong bond with their foster parents, who are potential adoptive placements for the children.

In her closing argument, mother's counsel stated she did not believe mother was ready to regain custody of all of the children at that time. Rather, she suggested a "gradual reunification or integration of the children into [mother's] home." In addition, the guardian *ad litem* for the children opined it was in the best interests of the children to terminate mother's parental rights because mother had failed to remedy the conditions that brought the children into foster care despite the assistance and reasonable efforts made by DHS.

The trial court found mother had been "making an effort over a period of time, but somewhere in there toward the beginning of 2013, she regressed and hasn't remedied the situation."

The trial court noted mother had issues with housing, employment, reliance on others for financial assistance, and remedying the situation that led the children to come into foster care.

"'[P]ast actions and relationships over a meaningful period serve as good indicators of what the future may be expected to hold.'" Linkous v. Kingery, 10 Va. App. 45, 56, 390 S.E.2d 188, 194 (1990) (quoting Frye v. Spotte, 4 Va. App. 530, 536, 359 S.E.2d 315, 319 (1987)).

> Virginia law recognizes the "maxim that, sometimes, the most reliable way to gauge a person's future actions is to examine those of his past." "As many courts have observed, one permissible 'measure of a parent's future potential is undoubtedly revealed in the parent's past behavior with the child.'" "No one can divine with any assurance the future course of human events. Nevertheless, past actions and relationships over a meaningful period serve as good indicators of what the future may be expected to hold."

Toms, 46 Va. App. at 267-68, 616 S.E.2d at 770 (citations omitted).

As addressed above, DHS offered mother numerous services designed to reunify the family. Mother failed to consistently participate in the recommended parenting coaching services, the structural family therapy, and individual therapy. She had several issues with the unsupervised visitation with the children and failed to maintain stable housing and employment.

Based upon a review of the circumstances in this case, DHS provided reasonable and appropriate services to mother and there was clear and convincing evidence that mother was unwilling or unable to remedy the problems during the period in which she was offered services. In addition, the children had been in foster care for two years and nine months at the time of the hearing. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Kaywood v. Halifax Cnty. Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990). Furthermore, the record supports the determination that it was in the best interests of the children to terminate mother's parental rights. Accordingly, the evidence was sufficient to support the trial

court's decision to terminate mother's parental rights to the four children under Code

§ 16.1-283(C)(2). For these same reasons, the evidence supports the trial court's decisions to enter

permanency planning orders with the goal of adoption and to approve the foster care plans with the

goal of adoption.

## Assignments of Error Not Preserved

In assignments of error VII, XII and XIII, mother argues the trial court erred in: "failing to

evaluate the evidence relating to each child in issue separately and individually and mak[ing]

individual findings for the child in issue;" "interpreting and applying the public policy of [Code]

§ 16.1-283(C) by making the one-year period the controlling factor;" and "failing to apply a clear

and convincing standard in determining the issues relevant to (a) approval of the adoptions goal and

(b) the termination of parental rights." Mother failed to present any of these arguments to the trial

court.

"The Court of Appeals will not consider an argument on appeal which was not presented

to the trial court." Ohree v. Commonwealth, 26 Va. App. 299, 308, 494 S.E.2d 484, 488 (1998).

See Rule 5A:18. Accordingly, Rule 5A:18 bars our consideration of these assignments of error

on appeal. Moreover, the record does not reflect any reason to invoke the good cause or ends of

justice exceptions to Rule 5A:18.

For these reasons, we affirm the trial court's decisions.

Affirmed.