# COURT OF APPEALS OF VIRGINIA

Present: Judges Beales, Huff and Senior Judge Annunziata

UNPUBLISHED

ALICE SHAQUITA THOMPSON

                                                       MEMORANDUM OPINION[*]

v.        Record No. 1599-19-2                               PER CURIAM
                                                            MAY 5, 2020

RICHMOND DEPARTMENT OF SOCIAL SERVICES

### FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Beverly W. Snukals, Judge

(John W. Parsons, on brief), for appellant.

(Keisha Dillard-Brady, Assistant City Attorney; James A. Johnson,
Guardian *ad litem* for the minor children, on brief), for appellee.


Alice Thompson (mother) appeals the circuit court order terminating her parental rights to

her children and approving the foster care goal of adoption. Mother argues that the circuit court

erred by terminating her parental rights under Code § 16.1-283(C)(2) and finding that termination

was in the best interests of the children. Upon reviewing the record and briefs of the parties, we

conclude that this appeal is without merit. Accordingly, we summarily affirm the decision of the

circuit court. See Rule 5A:27.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND[1]

"On appeal from the termination of parental rights, this Court is required to review the evidence in the light most favorable to the party prevailing in the circuit court." Yafi v. Stafford Dep't of Soc. Servs., 69 Va. App. 539, 550-51 (2018) (quoting Thach v. Arlington Cty. Dep't of Human Servs., 63 Va. App. 157, 168 (2014)).

Mother and Julius Edward Hughes (father) are the biological parents to the two children who are the subject of this appeal.[2] On February 27, 2017, the Richmond Department of Social Services (the Department) became involved with the family after receiving a complaint regarding school truancy. The children lived with their parents in a home without electricity, after living in a known "drug house." The Department also discovered that the parents were not supervising the children. Mother and father have a history of substance abuse and domestic violence, and mother had received mental health services. Mother refused offers from the children's school for domestic violence resources. The Department had received reports that there was no food in the home and that the parents were selling their food stamps. On March 2, 2017, the Department removed the children, who were then five and six years old, from their parents' care and placed them in foster care.

---

[1] The record in this case was sealed. Nevertheless, the appeal necessitates unsealing relevant portions of the record to resolve the issues appellant has raised. Evidence and factual findings below that are necessary to address the assignments of error are included in this opinion. Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." Levick v. MacDougall, 294 Va. 283, 288 n.1 (2017).

[2] The circuit court also entered orders terminating father's parental rights under Code § 16.1-283(C)(2) and approving the foster care goal of adoption. Father appealed the circuit court's ruling. See Hughes v. Richmond Dep't of Soc. Servs., Record No. 2017-19-2.

On March 30, 2017, the Richmond Juvenile and Domestic Relations District Court (the JDR court) adjudicated that the children were abused or neglected. On April 25, 2017, the JDR court entered a dispositional order.

The Department required the parents to refrain from using illegal substances, submit to random drug tests, and participate in substance abuse treatment. The Department also required the parents to obtain and maintain stable housing and employment. Mother needed to obtain mental health services. The parents also had to submit to psychological and parenting assessments, participate in parenting classes and a money management class, and complete background checks.

The Department provided numerous services to the parents. The Department referred them for assistance with housing and employment. In fact, the Department paid the balance of a deposit and rent for three months on an apartment for mother and father, but they were later evicted after failing to pay the rent for five months. The Department also referred the parents to domestic violence counseling.

The parents had a history of substance abuse, and the Department required them to obtain substance abuse treatment. The JDR court ordered the parents to submit to drug tests; although mother tested negative on August 1, 2017, she tested positive for cocaine, THC, and opiates on March 13, 2018. In 2018, mother was convicted of three charges for stealing alcohol from a Virginia ABC store, possessing drug paraphernalia,[3] and falsely identifying herself to a law enforcement officer. Mother also was convicted of failing to appear in court and failing to comply with pretrial supervision.

---

[3] Mother originally was charged with possessing cocaine, but the charge was reduced to possessing drug paraphernalia.

The Department required the parents to participate in a psychological and parenting capacity evaluation, which they completed. The Department also offered supervised visitation to the parents. Mother voluntarily stopped visiting with the children in June 2018.

After the children entered foster care, the Department spoke with Precious Thompson, the children's maternal aunt, about the children's placement, and Thompson initially expressed interest in caring for them. The Department gave Thompson background checks to complete, but after "some months," she informed the Department that she no longer wished to be considered a relative placement. Thompson explained that she wanted "to see the parents step up and go forward with being parents for their children." She also did not have the space or finances to care for the children. The Department investigated other placements without success.

In 2018, Thompson contacted the Department because she was interested in caring for the children again. The Department arranged for the children to visit with Thompson, and they progressed to overnight visits until June 28, 2019, when the Department reverted back to supervised visits after learning that Thompson was allowing the parents to visit with the children at her house.

On March 26, 2019, the JDR court terminated mother's parental rights and approved the foster care goal of adoption. Mother appealed to the circuit court.

On August 28, 2019, the parties appeared before the circuit court. At the beginning of the hearing, the parties stipulated that "the factors for removal in Virginia Code § 16.1-283(C)(2) have been met." All parties agreed that mother and father had not remedied the situation that led to the children entering, and continuing, in foster care. The parties further agreed that the only issue was "the vetting of the relatives."

The Department presented evidence regarding its investigation of placing the children with Thompson or other relatives. After Thompson contacted the Department in 2018 to express

her interest again in caring for the children, the Department referred Thompson to foster parent training, which she completed; however, she failed to satisfy the other requirements of submitting references, a physical examination record, tuberculosis test results, a fire inspection report, and a driving record.

The Department expressed concern about Thompson's mental health. In 2012, child protective services became involved with Thompson and her family after she had disclosed suicidal ideations to her counselor. Thompson received psychiatric medication for a while and participated in therapy until she voluntarily stopped seeing her therapist in December 2018 due to scheduling issues.

Furthermore, the Department presented evidence that Thompson did not fully disclose her relationship status. She was legally married but reported to be single. Her wife was incarcerated for theft; they had been separated since February 2017 because of domestic violence. Thompson also had a boyfriend who visited her and the children. He moved to North Carolina, and Thompson visited him several times until February 2019, when she ended the relationship. Thompson refused to disclose his name to the Department, which wanted to conduct a background check on him.[4]

The guardian *ad litem* discovered that Thompson's oldest child engaged in assaultive behavior toward the children. Thompson denied the occurrence of any violence or inappropriate behavior.

In addition to information regarding the investigation into Thompson and other relatives, the Department presented evidence that the children were doing well in foster care. The foster mother testified that when the children first came into foster care, the older child was

---

[4] Thompson admitted that she did not know her boyfriend's criminal history and did not think it was necessary to ask him, even though he was around the children and her own biological children.

- 5 -

"aggressive," and the younger child was "fearful." The foster mother noticed that after the children started overnight visits with Thompson, the older child bullied other children at school, yelled, and became "more aggressive." The children started seeing a therapist while in foster care, and the foster mother described them as "good" and improving, especially academically.

Over the parents' objection, the circuit court conducted an *in camera* interview with the children to determine whether they had had any contact with the parents while they were in Thompson's care. The younger child reported that mother had come to Thompson's house "a lot of times" while the children were there, but the older child denied visiting with mother at Thompson's house. The older child volunteered that Thompson's oldest child "beat" them and told them that "he was going to break [their] leg[s], he said he didn't want [them at Thompson's house]."

At the conclusion of the Department's evidence, mother and father moved to strike the Department's evidence, which the circuit court denied. Thompson testified and explained that when the children first entered foster care, she had had a different job and lived in a smaller home, so she could not care for the children. In July 2017, she moved to a larger home, and in October 2018, she changed jobs. When she contacted the Department about caring for the children again, she learned that she would have to take a foster parent class, which she completed, and that a stipend would be available to her.

Thompson denied the allegations that mother and father visited the children at her house, and she stated that she would comply with any orders regarding contact between the children and the parents. Thompson explained that she originally had wanted mother "to get it together," but when the Department indicated that it was pursuing termination of parental rights, Thompson wanted to care for the children because they "should be with family." Thompson testified that

she was "more than capable and willing to provide stability for them, safety, nurturing, love, financially, physically, and emotionally."

In his report to the circuit court, the guardian *ad litem* explained that the children needed permanence after being in foster care for approximately two and a half years. Based on his investigation and the evidence presented, the guardian *ad litem* did not recommend Thompson as a relative placement because of concerns about her dishonesty, her ongoing divorce, her unwillingness to screen people, the conflict in her home with her oldest child and the children, and her ability to supervise and meet the children's needs. The guardian *ad litem* emphasized how much the children had improved in foster care and how well they were doing in their foster mother's care.

After hearing all of the evidence, the guardian *ad litem*'s report, and argument, the circuit court took the matter under advisement and subsequently issued a letter opinion. The circuit court accepted the parties' stipulation that the factors in Code § 16.1-283(C)(2) had been met and granted the Department's petitions to terminate parental rights. It also found that Thompson did not "satisfy the factors enabling her to take custody of the children under Code § 16.1-283(A)(1)." The circuit court found that although Thompson was willing to care for the children and had a "positive, continuous relationship" with them, she did not have "the ability to provide a suitable home" for the children. The circuit court found that Thompson was unwilling and unable to protect the children from abuse and neglect. The circuit court further found that Thompson was not credible or forthcoming at the hearing. The circuit court concluded that Thompson was not a suitable placement because of her psychological history and lack of current treatment, her lack of transparency about her boyfriend, the "conflict and potential violence" between her oldest child and mother's children, and her willingness to offer mother unsupervised visitation with the children. The circuit court denied Thompson's petitions for custody of the

children and approved the foster care goal of adoption. The circuit court entered an order memorializing its rulings. This appeal followed.

ANALYSIS

"On review, '[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" Castillo v. Loudoun Cty. Dep't of Family Servs., 68 Va. App. 547, 558 (2018) (quoting Logan v. Fairfax Cty. Dep't of Human Dev., 13 Va. App. 123, 128 (1991)). "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Fauquier Cty. Dep't of Soc. Servs. v. Ridgeway, 59 Va. App. 185, 190 (2011) (quoting Martin v. Pittsylvania Cty. Dep't of Soc. Servs., 3 Va. App. 15, 20 (1986)).

Mother argues that the circuit court erred in terminating her parental rights under Code § 16.1-283(C)(2). She contends that the statute requires the Department to present clear and convincing evidence that termination was in the best interests of the child and that the factors in Code § 16.1-283(C)(2) were present. She acknowledges that she conceded at the circuit court hearing that the factors in Code § 16.1-283(C)(2) were present. On appeal, she argues that the circuit court erred in finding that termination was in the children's best interests because Thompson was a suitable relative placement.

"The statutory scheme for the constitutionally valid termination of residual parental rights in this Commonwealth is primarily embodied in Code § 16.1-283." Layne v. Layne, 61 Va. App. 32, 36 (2012) (quoting Rader v. Montgomery Cty. Dep't of Soc. Servs., 5 Va. App. 523, 526 (1988)). "That scheme provides detailed procedures designed to protect the rights of the parents and their child. These procedures must be strictly followed before the courts are permitted to sever the natural and legal bond between parent and child." Id. at 36-37. Before terminating a

parent's rights, "the court shall give a consideration to granting custody to relatives of the child, including grandparents." Code § 16.1-283(A). "This Court has held that this provision obligates [the Department] 'to produce sufficient evidence so that the court may properly determine whether there are relatives willing and suitable to take custody of the child, and to consider such relatives in comparison to other placement options.'" Castillo, 68 Va. App. at 567 (quoting Brown v. Spotsylvania Dep't of Soc. Servs., 43 Va. App. 205, 217 (2004)). Accord Hawthorne v. Smyth Cty. Dep't of Soc. Servs., 33 Va. App. 130, 136 (2000); Logan, 13 Va. App. at 131.

The circuit court heard evidence about the Department's investigation into possible placements, and it heard Thompson's testimony. To place the children with Thompson, the circuit court would have had to find, based upon a preponderance of the evidence, that Thompson was (1) "willing and qualified to receive and care" for the children, (2) "willing to have a positive, continuous relationship" with the children, (3) "committed to providing a permanent, suitable home," and (4) willing and able "to protect the child[ren] from abuse and neglect." Code § 16.1-283(A1). The circuit court found that Thompson was willing to care for the children and had a positive, continuous relationship with them.

The circuit court, however, found that Thompson was not able to adequately provide a suitable home for the children or protect the children from abuse and neglect. In reaching this conclusion, the circuit court considered Thompson's lack of credibility at the hearing; in particular, the circuit court noted her incomplete and evasive answers to questions. The circuit court was concerned that Thompson had "untreated psychological issues," and had abruptly discontinued psychological treatment without explanation. The circuit court found that Thompson's "refusal to disclose information about her boyfriend" to the Department also weighed against her suitability as a placement for the children. The circuit court found that Thompson's home "presents conflict and the potential for violence" between Thompson's oldest

- 9 -

child and the children. Finally, the circuit court found that there was a possibility that Thompson would allow "unsanctioned and unsupervised" visitation to mother. Upon consideration of the combination of these problems and concerns, the circuit court concluded that Thompson was not a suitable placement. "Because this Court defers to a lower court's judgment based on evidence heard *ore tenus* unless plainly wrong or without support, <u>Logan</u>, 13 Va. App. at 128, it does not disturb the circuit court's ruling that no relatives were suitable placements." <u>Castillo</u>, 68 Va. App. at 568.

Accordingly, based on the record before us, we find that the circuit court did not err in finding that Thompson was not a suitable relative placement. The parents had stipulated that the factors in Code § 16.1-283(C)(2) had been met. The evidence proved that the children were doing well in foster care and that it was in their best interests to terminate mother's parental rights.

CONCLUSION

For the foregoing reasons, the circuit court's ruling is summarily affirmed. Rule 5A:27.

<u>Affirmed.</u>