COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Athey, Friedman and Raphael
Argued at Richmond, Virginia


TEOSHA HAYNESWORTH

v.      Record No. 1706-22-2

HENRICO DEPARTMENT OF
  SOCIAL SERVICES                                         MEMORANDUM OPINION[*]
                                                       JUDGE STUART A. RAPHAEL
TEOSHA HAYNESWORTH                                          JANUARY 30, 2024

v.      Record No. 1720-22-2

HENRICO DEPARTMENT OF
  SOCIAL SERVICES


FROM THE CIRCUIT COURT OF HENRICO COUNTY
John Marshall, Judge

Charles S. Moore (Law Offices of John C. Singleton, on brief), for
appellant.

Denise M. Letendre, Senior Assistant County Attorney (Andrew
Newby, County Attorney; John Parsons, Guardian *ad litem* for the
minor children, on brief), for appellee.


Teosha Haynesworth appeals the circuit court's orders terminating her parental rights

under Code § 16.1-283(C)(2), arguing that the evidence was insufficient to support the court's

determinations. The two record numbers here correspond to appeals of the separate orders for

each child: A.H., Record No. 1706-22-2 (Case Nos. CJ22-89 and CJ22-90); and K.H., Record

No. 1720-22-2 (Case Nos. CJ22-91 and CJ22-92). Finding no reversible error, we affirm the

judgments.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

"On appeal from the termination of parental rights, this Court is required to review the evidence in the light most favorable to the party prevailing in the circuit court." *Simms v. Alexandria Dep't of Cmty. & Hum. Servs.*, 74 Va. App. 447, 452 (2022).

*Haynesworth's arrest and the Department's involvement*

On February 16, 2021, the Henrico County Department of Social Services received a report that Haynesworth left her children, A.H. (6 years old) and K.H. (3 years old), alone in a hotel room "for an extended period of time" while she argued with hotel staff.[2]  She refused to leave the hotel, so the staff called the police, who arrested her for trespassing.  During the arrest, Haynesworth assaulted a police officer.  Though she at first refused, Haynesworth eventually identified her cousin as an immediate placement option for the children, and her cousin picked up the children.  The Department launched a "Voluntary Prevention" case with Haynesworth and the children, and Henrico County Child Protective Services initiated a family assessment.

About a week later, the Department contacted Haynesworth about "allegations of physical neglect of her children."[3]  Haynesworth was "irate and argumentative" with Department

---

[1] The record in these cases was sealed.  "To the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case.  The remainder of the previously sealed record remains sealed." *Levick v. MacDougall*, 294 Va. 283, 288 n.1 (2017).

[2] The parental rights of A.H.'s biological father were terminated in July 2022.  The parental rights of K.H.'s biological father, whose identity is unknown, were also terminated in 2022.

[3] Haynesworth had a history with the Department, starting in 2018 when the Department received a report that she had left the children in the car while shopping.  The Department began working with Haynesworth on a voluntary prevention case, which included paying for her to stay in a hotel and providing temporary housing assistance, family support, referrals for transportation, financial assistance, childcare, mental health services, and furniture.  Since September 2020, Haynesworth had had contacts with law enforcement on five separate occasions.

representatives, denying that the Department had initiated a voluntary prevention case or that the hotel incident occurred. She also refused to disclose her location to the Department and seemed "incoherent," "repeat[ing] herself several times and form[ing] nonsensical sentences in response to questions."

The Department contacted Haynesworth's cousin, who expressed concern about Haynesworth's mental health and informed the Department that the children did not want to go back to their mother. Beverly Haynesworth, the children's maternal grandmother, informed the Department that the children were living with her and that she was concerned that Haynesworth was "not well and was getting increasingly agitated." Beverly warned that Haynesworth was not regularly feeding the children because they appeared "significantly thinner" than the last time she had seen them months earlier. Beverly also reported that K.H. had "not been enrolled in school for several months and had not completed any school work." Based on those concerns, the Department contacted the Henrico Police Crisis Intervention Team. The Crisis Team reported that it was familiar with Haynesworth because of "ongoing concerns regarding her mental health" and that Haynesworth was "very close to being ECO'd."[4]

The Department then asked Haynesworth and Beverly to meet with the children to form a safety plan and to address the Department's concerns, but Haynesworth again became "irate and

---

[4] Code § 37.2-808 permits a magistrate to issue an emergency custody order (ECO)

> when he has probable cause to believe that any person (i) has a mental illness and that there exists a substantial likelihood that, as a result of mental illness, the person will, in the near future, (a) cause serious physical harm to himself or others as evidenced by recent behavior causing, attempting, or threatening harm and other relevant information, if any, or (b) suffer serious harm due to his lack of capacity to protect himself from harm or to provide for his basic human needs, (ii) is in need of hospitalization or treatment, and (iii) is unwilling to volunteer or incapable of volunteering for hospitalization or treatment.

argumentative." Beverly "expressed concern . . . for her own safety as well as her grandchildren's safety due to [Haynesworth's] bizarre behavior."

*The emergency custody order*

On February 22, 2021, the police obtained an emergency custody order and transported Haynesworth to the Central State Hospital for a psychiatric evaluation. Haynesworth remained hospitalized for about two months under a temporary detention order. The Department assumed custody of the children "[d]ue to significant concern regarding [Haynesworth's] mental impairment and inability to make a plan for her children."[5]

Cate Clifton, a family services specialist in the Department, began working with the family around this time. Clifton first met with Haynesworth virtually (while Haynesworth was still at the hospital) at a family partnership meeting on March 2, 2021, but Haynesworth was "not in agreement with a lot of things." At the preliminary removal hearing that same day, Haynesworth was ordered to comply with mental health treatment, take prescribed medications, follow service recommendations after her discharge, and sign releases for the Department to receive information from her service providers.

But Haynesworth did not cooperate. She did not engage in mental health treatment, take any medications, sign releases, or provide the Department with information about her housing or employment. Nor did she sign a release of information for Clifton to speak with her providers, so Clifton could not initiate a call with Haynesworth while she was still at the hospital. When Haynesworth realized she had temporarily allowed Clifton to speak with Richmond Behavioral Health about her status, Haynesworth revoked her consent.

---

[5] When the children first came into the Department's care, A.H. had difficulty sleeping. On one occasion, she woke up in fear that "kids with knives were coming to get her" because Haynesworth had told her that.

- 4 -

*The foster care plan*

By the time Haynesworth was released from the hospital in May 2021, Clifton had filed a foster care plan for each child, and the children were adjudicated as abused or neglected because of "the unreasonable absence or the mental or physical incapacity of the child's parent."[6] Clifton met with Haynesworth on May 13, 2021, but Haynesworth was again uncooperative. She refused to sign a release of information and denied all attempted services that Clifton sought to provide, such as consultations and case management. She also declined mental health assessments and financial and housing assistance. She did, however, sign a visitation plan after Clifton explained that the Department would seek legal action to limit contact if she tried to visit her children other than during the times organized by the Department.[7]

Clifton picked up the children after the May 13 meeting to drive them to their grandmother. The children became "very emotional," "literally kicking and screaming" when she said they would be visiting their mother the next day. So Clifton and the guardian *ad litem* decided not to have the children visit Haynesworth. Instead, they scheduled a virtual visit with her, but Haynesworth failed to attend.

Several days later, Clifton received a report from two relatives that Haynesworth had gone to see the children in violation of the visitation plan. After that, Clifton referred Haynesworth to the Attachment & Trauma Institute for "therapeutic supervised visits" with her children. But when Haynesworth first arrived at ATI, she was seen in the parking lot cursing about how ATI had placed her children in foster care. ATI's director, Khilia Giacobone, observed Haynesworth's chaotic behavior, refused to let her in the building, and ultimately

---

[6] The Henrico County Juvenile and Domestic Relations District Court entered dispositional orders for the foster care plans for each child on April 22, 2021.

[7] The weekend before the May 13 meeting, Haynesworth showed up at a relative's house, attempting to see the children in violation of the visitation plan.

denied her application for therapeutic visitation. Giacobone concluded, considering the outburst, that Haynesworth could not "calmly see her kids." When Giacobone and ATI offered Haynesworth services such as parenting support and classes in June 2021, Haynesworth "vehemently refused."

After ATI's rejection, the Department required Haynesworth to see a therapist. The Department asked that Haynesworth's therapist and the children's therapist decide together when visitation could resume. But by July 2021, Haynesworth had still failed to provide the required information to Clifton. Clifton filed a foster care service plan review in which the Department offered Haynesworth referrals, case management services, family visitation, therapeutic services, general updates, and other services.

On August 4, 2021, the Henrico County JDR court entered a foster care review order approving the foster care plan, finding that reasonable efforts had been made to reunite the children with Haynesworth. Beverly (the grandmother) was chosen as the placement for the children.

While living with Beverly, A.H. experienced "normalcy by being placed in a family setting," enjoyed "typical family activities," and thrived in school and day care. K.H.'s behavior and academics also improved, as he participated in extra-curricular activities and was physically healthy. Beverly expressed interest in adopting both children.

*Termination petitions and the JDR proceeding*

In November 2021, the Department filed another foster care plan with the goal of adoption. The Department noted that it had attempted to help Haynesworth comply with the court-ordered services, but she had failed to "acknowledge the reality of the court orders." Haynesworth had been under the sporadic care of a psychiatric nurse practitioner and case manager. But they reported that Haynesworth had "refuse[d] to take her psychiatric medications

- 6 -

or to attend therapy" and that she had recent bouts of "paranoia and possible psychotic symptoms." The Department determined that "the risk to the children" of visits with Haynesworth was "too high due to her current level of appropriateness (verbally) and non-compliance with mental health treatment." Haynesworth also continued to withhold from the Department any information about her current housing or employment.

On January 13, 2022, the Department petitioned for the termination of Haynesworth's parental rights. On July 29, 2022, the Henrico County JDR court terminated Haynesworth's parental rights under Code § 16.1-283(C) and approved the foster care goal of adoption. Haynesworth appealed to the circuit court.

*Circuit court proceeding*

After an evidentiary hearing in the circuit court on October 25, 2022, the court found by "clear and convincing evidence" that terminating Haynesworth's parental rights was in the best interest of both children. The court found that Haynesworth was in "total denial" of her mental health problems. It cited her "disturbing behavior" and "incoherent testimony" during the hearing. The court also noted that Haynesworth had refused referrals for therapy, counseling, and mental health treatment and that she provided no evidence of housing or employment. Still, the Department had attempted to facilitate therapeutic visitation with the children. The court concluded that "the family [could not] be reunified when [Haynesworth] refuse[d] to acknowledge she ha[d] a mental health problem, refuse[d] to take medication, [and] refuse[d] treatment." Accordingly, the court entered orders for involuntary termination of Haynesworth's residual parental rights for both children and approved the foster care goal of adoption.

Haynesworth noted a timely appeal.

ANALYSIS

"Code § 16.1-283 embodies '[t]he statutory scheme for the . . . termination of residual parental rights.'" *Yafi v. Stafford Dep't of Soc. Servs.*, 69 Va. App. 539, 551 (2018) (alterations in original) (quoting *Rader v. Montgomery Cnty. Dep't of Soc. Servs.*, 5 Va. App. 523, 526 (1988)). The circuit court terminated Haynesworth's parental rights under Code § 16.1-283(C)(2), which authorizes the court to terminate parental rights

> if the court finds, based upon clear and convincing evidence, that it is in the best interests of the child and that:
>
> . . . .
>
> 2. The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed 12 months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

"[S]ubsection C termination decisions hinge not so much on the magnitude of the problem that created the original danger to the child, but on the demonstrated failure of the parent to make reasonable changes." *Yafi*, 69 Va. App. at 552 (alteration in original) (quoting *Toms v. Hanover Dep't of Soc. Servs.*, 46 Va. App. 257, 271 (2005)). "'Reasonable and appropriate' efforts [of the Department] can only be judged with reference to the circumstances of a particular case." *Harrison v. Tazewell Cnty. Dep't of Soc. Servs.*, 42 Va. App. 149, 163 (2004) (quoting *Ferguson v. Stafford Cnty. Dep't of Soc. Servs.*, 14 Va. App. 333, 338 (1992)). The Department "is not required to force its services upon an unwilling or disinterested parent." *Tackett v. Arlington Cnty. Dep't of Hum. Servs.*, 62 Va. App. 296, 323 (2013) (quoting *Harris v. Lynchburg Div. of Soc. Servs.*, 223 Va. 235, 243 (1982)). The children's best interest is the "paramount" concern. *Simms*, 74 Va. App. at 464; *Yafi*, 69 Va. App. at 551.

We "presume the [circuit] court 'thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" *Simms*, 74 Va. App. at 470 (quoting *Castillo v. Loudoun Cnty. Dep't of Fam. Servs.*, 68 Va. App. 547, 558 (2018)). "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." *Id.* (quoting *Fauquier Cnty. Dep't of Soc. Servs. v. Ridgeway*, 59 Va. App. 185, 190 (2011)).

Haynesworth argues that the evidence failed to show that she was, without good cause, "unwilling or unable to substantially remedy the conditions that led to the child's foster care placement." She adds that, even if she did fail to remedy those conditions, the Department failed to make "reasonable and appropriate efforts" to assist her.

We disagree. The record contains ample evidence to satisfy the requirements of Code § 16.1-283(C)(2) by clear and convincing evidence. Haynesworth repeatedly demonstrated that she was "unwilling or unable . . . to remedy substantially the conditions which led to . . . the child's foster care placement." That unwillingness began with her lack of cooperation with Clifton after Haynesworth was placed in the hospital. There, she refused to comply with mental health treatment, take prescribed medications, or follow service recommendations. She refused to sign releases that were critical to the Department's ability to monitor her status. And she cut off or refused any communications with Clifton while she was hospitalized.

Haynesworth was no more cooperative after being released from the hospital. At her May 2021 meeting with Clifton, she refused to sign releases of information, denied all services that the Department offered, and declined mental health assessments and financial and housing assistance. And even though she originally signed a visitation plan with the Department, she breached that agreement just days later.

- 9 -

Considering that the children's interests are paramount, we find it significant that the children were distressed by the idea of even *visiting* their mother. As the circuit court found, the children needed "a stable, permanent" home. But Haynesworth could not provide one because her mental state changed "from day to day," she failed to receive mental health care, and she refused to provide the Department basic information or use their services. The children had been in foster care for over 20 months by the time of the circuit court hearing. They had benefitted from a stable family setting, and both were thriving in school, day care, family, and extra-curricular activities. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." *Tackett*, 62 Va. App. at 322 (alteration in original) (quoting *Kaywood v. Halifax Cnty. Dep't of Soc. Servs.*, 10 Va. App. 535, 540 (1990)).

The record also supports the circuit court's finding that the Department made "reasonable and appropriate efforts" to remedy the conditions that led to the foster care placement. The Department's efforts began when it initiated a voluntary prevention case, which Haynesworth essentially ignored. Before Haynesworth's hospitalization, when the Department tried to form a safety plan to address its concerns, Haynesworth responded angrily. After the emergency order was issued and Haynesworth was hospitalized, the Department's efforts ramped up. It assigned Clifton to assist the family. She testified at length about her efforts to meet and communicate with Haynesworth and to support her with resources. The Department directed Haynesworth to comply with mental health treatment, take prescribed medications, and sign releases so they could more closely monitor Haynesworth's treatment and progress.

Even after Haynesworth's release from the hospital in May 2021, the Department continued to offer her services (including consultations and case management). Clifton met with Haynesworth and attempted to form a visitation plan. Clifton referred Haynesworth to the ATI,

which, even after denying Haynesworth's application for therapeutic visitation after her chaotic behavior, offered her other services (including support classes). The Department arranged for Haynesworth to see a therapist. It hoped to have her therapist and the children's therapist decide together when visitation could resume. And even after initiating termination proceedings in November 2021, the Department attempted to help Haynesworth by guiding her through the available services.

The Department was required to make only "reasonable and appropriate efforts," Code § 16.1-283(C)(2), not to "force its services upon an unwilling or disinterested parent," *Tackett*, 62 Va. App. at 323. The record amply supports the circuit court's finding that the Department made such reasonable and appropriate efforts with Haynesworth.

<sub>CONCLUSION</sub>

We find no error in the circuit court's termination of Haynesworth's parental rights under Code § 16.1-283(C)(2).

*Affirmed.*